(66 South. 337)

No. 20045.

ELDER v. ELLERBE et al.

(Oct. 19, 1914. Rehearing Denied Nov. 6, 1914.)

*(Syllabus by the Court.)*

1. MINES AND MINERALS (§ 48*)—RIGHTS OF POSSESSOR—"FRUITS OF THE LAND."

The right of a possessor in good faith to reap the benefit of the fruits of the land until it is claimed by its owner does not permit such possessor to extract the mineral oil and gas from the land and retain the proceeds.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 134; Dec. Dig. § 48.*]

*(Additional Syllabus by Editorial Staff.)*

2. WORDS AND PHRASES — "PRODUCTS" — "FRUITS."

The word "products" as used in article 502, Rev. Civ. Code, providing "the products of the thing do not belong to the simple possessor, and must be returned with the thing to the owner who claims the same, unless the possessor held it bona fide," is synonymous with "fruits."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Product; Fruit.]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by Mrs. Mary Lewis Elder against Clarence Ellerbe and others. From judgment for plaintiff, defendants appeal. Affirmed.

Hampden Story, of Shreveport, for appellant Producers' Oil Co. Wise, Randolph, Rendall & Freyer, of Shreveport, for appellants Ellerbe and Standard Oil Co. of Louisiana. Farrar, Jonas, Goldsborough & Goldberg, of Shreveport, for appellant Ellerbe on application for rehearing. John B. Files and J. H. Shepherd, both of Shreveport, for appellee.

O'NIELL, J. The plaintiff claims an undivided half interest in a tract of land described as the E. ½ of W. ½ of section 9, T. 21 N., R. 16 W., containing 160 acres, of which 135 acres is claimed by the defendant Ellerbe, and 25 acres is claimed by and in

the possession of the defendant Producers' Oil Company. She also claims of the defendant Ellerbe, half of a certain bonus and of certain royalties received by him from the Standard Oil Company under a mineral lease.

The defendants' exception of nonjoinder of parties being sustained by the district court, the plaintiff filed a supplemental petition, making the Standard Oil Company a party defendant, as the lessee in possession of the 135 acres claimed by the defendant Ellerbe.

Judgment was rendered in favor of the plaintiff, recognizing her to be the owner of an undivided half of the entire tract of 160 acres, allowing her to recover from the defendant Ellerbe $10,125, being half of the bonus paid by the Standard Oil Company to Ellerbe for the mineral lease, and the further sum of $1,338.98, being half of the royalty collected by Ellerbe up to the time of the filing of this suit; and the right was reserved to the plaintiff to recover from the Standard Oil Company half of the royalties accruing thereafter. Judgment was rendered in favor of the Producers' Oil Company against Ellerbe, in warranty, for $666.67, being half of the purchase price of the 25 acres of the land in dispute. From this judgment all three defendants have appealed; and the plaintiff has answered, praying that the judgment against Ellerbe for $10,125, be increased to twice that sum.

[1] This tract of 160 acres was purchased from the state of Louisiana by Ben Lewis under patent No. 630, dated the 11th of August, 1870. He sold it to C. W. Lewis and John H. Lewis jointly on the 26th of October, 1870. The plaintiff is the only surviving daughter and sole heir of C. W. Lewis, and there is no evidence of his having disposed of his undivided half of this land.

On the 2d of April, 1886, John H. Lewis sold, with other lands, the tract in dispute (of which he owned only an undivided half) to Leon M. Carter. On the 12th of April, 1889, Carter sold the tract in dispute to A. H. Leonard, along with other lands, approximately 2,200 acres, and certain property in Shreveport. On the 20th of May, 1898, Leonard reconveyed to Carter the tract in contest, along with various other properties. On the 30th of June, 1898, Carter sold the tract in dispute to the Merchants' & Farmers' Bank, with various other properties. On the 28th of December, 1908, the name of this institution having been changed by amendment of its charter to that of Merchants' & Farmers' Bank & Trust Company, the liquidator of the latter institution, A. H. Leonard, sold to the defendant Ellerbe the tract in contest, with various other lands. On the 13th of December, 1909, A. H. Leonard and Clarence Ellerbe sold to the Producers' Oil Company that portion of the land in controversy lying south of a line drawn parallel with and 825 feet from its southern boundary, containing 25 acres, for $1,333.33 cash. On the 11th of February, 1911, Clarence Ellerbe gave a mineral lease to the Standard Oil Company on the remaining 135 acres in the E. ½ of W. ½ of section 9 and 135 acres in the S. E. ¼ of section 5, in the same township, for the cash consideration of $40,500 and a royalty of one-eighth of all the oil that might be extracted from the land by the lessee. The record discloses that the bonus was paid in the proportion of one-half for each tract of 135 acres, and that $2,677.89 had been paid as royalty when this suit was filed.

The property in dispute does not appear on the inventory in the succession of C. W. Lewis, which bears date the 16th of February, 1874. This omission may be due to the fact that at that time the land had little or no value. The purchase price of this tract with 480 acres more in the same township, in the sale from John H. Lewis to Leon M. Carter, was only $60, that is, less than 10 cents an acre. And it appears to have been

given little or no value in the subsequent sales, that is, by Carter to Leonard, by Leonard to Carter, by Carter to the bank, and by Leonard, as liquidator of the bank, to the defendant Ellerbe. In fact it is admitted by all parties to this suit that the land in contest was not considered of sufficient value to justify the payment of taxes on it until oil was discovered in its vicinity.

The defendants rely entirely upon their plea of prescription of 10 years. After an exhaustive review of the testimony, the district judge concluded that the defendants had failed to prove that they and their authors had had continuous possession for 10 years, and he, therefore, overruled the plea of prescription. We have gone over the testimony carefully and find no error in his ruling. This property remained, until about three years prior to the filing of this suit, unfenced, wild land, not occupied except as a public cattle range. It was never assessed to Leonard or Carter or the Merchants' & Farmers' Bank or Merchants' & Farmers' Bank & Trust Company, and was only assessed to Ellerbe for the last three years prior to the institution of this suit.

The defendants contend that the bank, in an indirect way, paid the taxes on this land, because the capital stock of the bank was assessed to the individual stockholders and the bank paid the taxes on it, the value of which was made up of the assets of the corporation, including this land. It is argued that, if the land in dispute had been assessed to the bank, that institution would have had the right to a deduction of the assessment of the land from the assessment of the capital stock to avoid a double assessment. This argument might serve to show that the state has lost nothing by the failure to have the land assessed to the bank, but that issue is not involved here. If the bank had had the land assessed to it and had paid the taxes, the fact would be material

only in so far as it would amount to an act of possession. No matter what justification there was for the failure to pay taxes on the land, the omission cannot be taken as an act of possession.

The Producers' Oil Company contends that the plaintiff did not pray to be recognized as the owner of an undivided half of the 25 acres purchased from the other defendant, Ellerbe. In her petition, after alleging that she was the owner of an undivided half of the entire E. ½ of W. ½ of section 9, the plaintiff alleged that the defendant Ellerbe sold 25 acres off of the southern end of the tract to the Producers' Oil Company for $1,333.33, and that she was entitled to have judgment against Ellerbe for half of this sum, or, in the alternative, to have the sale set aside as to her interest in the land. In the prayer of her petition, however, she asked for a judgment against both of the defendants, Ellerbe and the Producers' Oil Company, decreeing her to be the owner of an undivided half of the entire tract described in her petition. She did not pray for what she had alleged was her alternative right, to recover from Ellerbe half of the proceeds of his sale to the Producers' Oil Company. There is therefore no merit in this defense.

[2] The defendant Ellerbe contends that, even though the plaintiff be the owner of an undivided half of the land in contest, judgment should not have been rendered against him for half of the bonus and royalty collected from the Standard Oil Company before the institution of this suit, because he was a possessor in good faith and was entitled to the fruits of the land. He relies upon article 3453, R. C. C., which provides that, among the rights peculiar to the possessor in good faith, is:

"1. The right which such a possessor has to gather for his benefit the fruits of the thing, until it is claimed by the owner, without being bound to account for them, except from the time of the claim for restitution."

135 La.—32

In other words, the defendant contends that minerals are to be included in the definition of *fruits*.

The sense in which the word "fruits" is used is this article of the Code, i. e. "the right which such a possessor has to *gather* for his benefit the *fruits*," does not suggest the meaning of minerals. It refers to what is produced and reproduced from time to time or in successive seasons.

"The fruits must be of things that are born and reborn of the soil." Dalloz, Baudry-Lacontinerie, No. 321.

In article 502, R. C. C., the word "products" is used as synonymous with "fruits," viz.:

"The products of the thing do not belong to the simple possessor, and must be returned with the thing to the owner who claims the same, unless the possessor held it bona fide."

In the corresponding article of the Code Napoleon, 549, the word "fruits" is used, viz.:

"A party simply in possession is only entitled to the fruits where he is so by good faith."

It is well settled that a possessor in good faith must account to the owner of the land for the value of trees or timber cut and removed from his land, notwithstanding his rights under articles 3453 and 502, R. C. C. See McGee v. Louisiana Lumber Co., 123 La. 696, 49 South. 475; Ball Lumber Co. v. Simms, 121 La. 627, 46 South. 674, 18 L. R. A. (N. S.) 244; Gardere v. Blanton, 35 La. Ann. 811.

In the case of Rives v. Gulf Refining Co., 133 La. 178, 62 South. 623, oil and gas beneath the surface of the earth, and not confined within a pipe or casing, were decreed to be a part of the realty, not subject to ownership separate from the land.

The right of a possessor in good faith to gather for his benefit the fruits of the property of another, cannot be greater than the right of a usufructuary. "He has no right

to mines and quarries not opened." R. C. C. 552.

Our conclusion is that the defendant Ellerbe owes the plaintiff one-half of the price he received for permitting the Standard Oil Company to deplete this land of its mineral oil and gas. The fact that the plaintiff might have sued to annul the contract of lease between Ellerbe and the Standard Oil Company in so far as it affects her interest in the property does not defeat her right to recover half of the sum received by Ellerbe for the oil taken from the land owned by the plaintiff and defendant jointly.

We find no merit whatever in the appellee's prayer for an increase of the judgment against the defendant Ellerbe.

For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellants.