O’NIELL, Chief Justice.
 

 This is a concursus proceeding to determine the ownership of a fund in contest, The fund represents the 3/10 part of the
 
 Ys
 
 royalty due by the lessee, Gulf Refining Company, for oil produced from land owned by the defendants jointly. The oil was produced under a lease of 80 acres forming part of a farm called the Sherman Place, The Gulf Refining Company is only nominally the plaintiff, having no interest in the suit except to know who is entitled to this 3/10 part of the
 
 Ys
 
 royalty. Having deposited the fund in the registry of the Gourt, the company cited as defendants-Mrs. Mary McKinnon Garrett, widow of John L. Garrett, claiming all of the fund,on the one hand, and her five stepsons and three stepdaughters, and the three daughters and a son of a deceased stepdaughter, issue of a former marriage of John L. Gar-rett, also claiming all of the fund.
 

 The Sherman Place, having an area of, about 129 acres, belonged to the matrimonial community between John L. Garrett and Mrs. Mary McKinnon Garrett. The lease of the 80 acres was made by John L. Garrett to the Gulf Refining Company on March 23, 1937, for the primary term of five years; but no well was drilled on the. land until a year after the death, of John L. Garrett. He died on May 14, 1941, sur
 
 *677
 
 vived by the five sons and three daughters of his first marriage, and by the four grandchildren, namely, three daughters and a son of a deceased daughter of the first marriage. The contest is between the heirs of the first marriage of John L. Garrett, on the one side, and the widow, on the other side.
 

 John L. Garrett was survived also by three sons and three daughters of his marriage to Mrs. Mary McKinnon Garrett. The fund in contest is the 3/10 portion of the
 
 Ys
 
 royalty which belongs to the five sons and three daughters of the first marriage and the grandson and three granddaughters of the deceased Jphn L. Garrett, unless their 3/10 portion of the % royalty became the property of the widow by virtue of an agreement made on June 17, 1941, by and between her and the heirs of her deceased husband. The judge of the district court decided that the fund in dispute belonged to the heirs of the first marriage of John L. Garrett; but the court of appeal reversed the judgment, holding that the futid belonged to the widow by virtue of the contract dated June 17, 1941. The case is before us on a writ of review.
 

 It is not disputed that Mrs. Garrett owns a half interest in the Sherman Place as surviving partner in the matrimonial community between her and the late John L. Garrett; nor is it disputed that she is entitled to the usufruct of the
 
 Ys
 
 interest inherited by her three sons and three daughters, in the Sherman Place. The only question is whether she acquired by the agreement dated June 17, 1941, the 3/10 portion of the
 
 Ys
 
 royalty interest which otherwise belongs to the other defendants, — heirs of the first marriage of john L. Garrett.
 

 The legacy bequeathed by John L. Garrett to his wife was the usufruct of the farm called the Sherman Place, and was described in the following paragraph in his-will: “I give and bequeath unto my wife, Mary McKinnon, the following described property, to-wit: My undivided one half interest in * * * [describing the 129 acres of land comprising the Sherman. Place] * * * for her use and benefit as long as she shall live, afte r her death to be divided in equal amounts between, my surviving children or the heirs of any of the said children who may be dead. It being my intention that this land shall be held by my said wife until her death, for ner use and benefit, and then to be divided equally between my heirs.”
 

 The widow and all of the heirs of John L. Garrett agreed among themselves that his will should not be probated; and, accordingly, it was not offered for probate. In a joint petition to the court, the widow and heirs accepted the succession unconditionally, and by an ex parte judgment were recognized, respectively, as the surviving partner in the matrimonial community and as the heirs of John L. Garrett. This judgment and the written agreement entered into between the widow on the one hand and the heirs of John L. Garrett on. the other hand were filed for record in the recorder’s office on the same day, and almost simultaneously; that is, the judgment was filed at 9:40 a.m. and the contract at 9:53 a.m. on July S, 1941; that is,- on the day on which the judgment was signed.
 

 
 *679
 
 The farm called the Sherman Place, embracing the 80 acr|^ under lease to the Gulf Refining Company, was the family home. If the bequest of the Sherman Place to the widow for her use and benefit as long as she should live, and after her death to be divided among the heirs of the testator, was not the bequest of a usufruct it might have been deemed a prohibited substitution. Rev.Civil Code, arts. 1520 and 1522. The validity of the bequest, however, as giving to the widow the usufruct ■of the Sherman Place, was not questioned. On the contrary, all of the heirs of the testator, by their written agreement with the widow, on June 17, 1941", consented that the bequest to her should have effect. The agreement reads as follows:
 

 “The above appearers [referring to the 18 heirs of John L. Garrett] do hereby agree, without any revocation, to the use ■of the property described herein below for the use of Mrs. Mary McKinnon Garrett, during her entire lifetime, and from which she shall have the revenues, and at the ■death of the said Mrs. Mary McKinnon Garrett said property will be divided under the laws of the State of Louisiana, it being understood that at this date the said Mrs. Mary McKinnon Garrett owns one half of the said property and that the other haif was inherited by these appearers on the death of the said John L. Garrett, but that said property is community property of the said John L. Garrett and Mrs. Mary McKinnon Garrett and by that fact an undivided one half belongs to her and one half belonged to said John L. Garrett and now to your appearers, and that - at the death of the said Mrs. Mary McKinnon Garrett her heirs will inherit her undivided one half of said property, which property is hereby described as follows, to wit: [describing the 129 acres comprising the farm called the Sherman Place].
 

 * >|? * * * *
 

 “It is further understood and agreed that the said Mrs. Mary McKinnon Garrett shall have full charge of said above described real estate, but shall not attempt to encumber said property or sell same to disadvantage of your appearers.”
 

 The widow of John L. Garrett contends that this agreement, dated June 17, 1941, superseded the bequest of the usufruct, in the will of her husband, and gave her the right to receive, as her own, the 3/10 share of the heirs of the first marriage of her husband in the proceeds of any oil that might be produced thereafter by the Gulf Refining Company from the 80 acres covered by the lease dated March 23, 1937. She contends, alternatively, that this agreement, dated June 17, 1941, enlarged or extended her rights as usufructuary, so as to give her all .of the future revenues of the Sherman Place, — including as revenues all of the proceeds of any oil that might be produced thereafter from the 80 acres of land leased to the Gulf. Refining Company.
 

 Inasmuch as the Sherman Place belonged to the ' matrimonial community between John L. Garrett and his second wife, she was entitled, under article' 916 of the Civil Code, to the usufruct of the 1/5 interest inherited by her three sons and three daughters; but she was not entitled under the law to the usufruct of the 3/10 inter
 
 *681
 
 est inherited hy the heirs of the first marriage of her husband. See Succession of Williams, 168 La. 1, 121 So. 171. All that the widow could have acquired by the legacy in the will of her husband, therefore, if it had been admitted to probate, was the usufruct of the 3/10 interest inherited by the heirs of the first marriage of her husband, in the fafm called the Sherman Place.
 

 Mrs. Garrett relies upon the fact that in her husband’s will he used the phrase “use and benefit” and the phrase “as long as she shall live”; whereas, in their written agreement, the widow and heirs of the testator used the words “use” and “revenues”, and the phrase “during her entire lifetime”. The heirs of the first marriage of John L. Garrett say that it was not intended, by the substitution of the words “use” and “revenues”, for the phrase “use and benefit”, to enlarge or extend the legacy of the usufruct of the Sherman Place,— so as to give to the legatee these heirs’ right to receive 3/10 of the proceeds of any oil that might be produced thereafter from the 80 acres leased to the Gulf Refining Company.
 

 We concur in the opinion of the trial judge that the heirs of the first marriage of John L. Garrett did not intend by the agreement which they made with the widow of John L. Garrett on June 17, 1941, that it should have the effect of conveying to her these heirs’ 3/10 of the proceeds of any oil that might be produced thereafter from the 80 acres leased to the Gulf Refining Company. As far as these heirs were concerned the giving of the usufruct of the Sherman Place was a gratuitous transaction. Therefore, if the wording of the agreement has left any doubt about the extent of the right which these heirs conveyed to the widow of John L. Garrett, on June 17, 1941, the doubt must be resolved in favor of the grantors, and the agreement must be construed as giving to the widow only the usufruct of the grantors’ interest in the Sherman Place. Article 2474 of the Civil Code provides that any obscure or ambiguous clause in an act of sale must be construed against the seller, but in a gratuitous conveyance the rule is the other way; for it is declared in article 1717 of the Civil Code that if the extent of a legacy cannot be ascertained it must be decided to be for the least quantity. And in Bettison v. Avoyelles Land & Improvement Company, 120 La. 498, 45 So. 403, it was held: “An obscure clause in an act of sale will be construed against the vendor, but the rule is different as to uncertainty in an act of donation as between the donee and the donor and parties holding title under the latter.”
 

 The widow and all of the heirs of John L. Garrett seem to have construed the agreement which they entered into on June 17, 1941, as conferring upon the widow no greater right than that of usufructuary of the interest owned by the heirs of the first marriage in the Sherman Place; because on that date the widow and all of the 18 heirs filed a joint petition in the Succession of John L. Garrett, asking the court to send them into possession of his estate; and in their petition they asked that the widow should be sent into posses
 
 *683
 
 sion as owner of a half interest in the Sherman Place and as usufructuary of the other half interest, belonging to the heirs of John L. Garrett, — thus: “Wherefore, petitioners pray that Mrs. Mary McKinnon Garrett be recognized as the surviving spouse in community of the deceased, entitled, as such, to the ownership of an undivided one half of the following described property, to wit: * * * [Here follows a detailed description of the farm called the Sherman Place],
 
 and to the usufruct thereof of the other undivided one half;
 
 and your other petitioners pray, that is, the children and grandchildren, pray to be recognized as the sole heirs of their deceased father, entitled, as such, to the ownership of the one undivided one half of all the property left by the deceased, particularly the real estate hereinabove described in this’ prayer,
 
 subject to the usufruct in favor of the surviving spouse of said community;
 
 and of the other real estate [be ing separate property of the deceased] described in paragraph five of this petition; and of all the personal property left by said deceased.” [The italics are ours.]
 

 In response to that petition, filed jointly by the widow and heirs of John L. Garrett on June 17, 1941, the court rendered judgment on July S, 1941, recognizing and decreeing that the widow was entitled to one half of the community property of the estate, which included the Sherman Place, and recognizing and declaring her to be entitled to the usufruct of the half interest which was inherited by the heirs of John L. Garrett. The judgment also recognized, by name, the five sons and three daughters of the first marriage and the four grandchildren, as being the only heirs of the first marriage of John L. Garrett, and recognized, by name, the three sons and three daughters of the second marriage as being his only heirs by that marriage. It was decreed also in the judgment that the half interest inherited by the heirs of John L. Garrett, in the Sherman Place, was subject to “the usufruct of said property as provided by law”.
 

 In fact, the widow of John L. Garrett, in her answer to this suit, averred that shortly after the death of her husband it was represented to her that, instead of having the will probated, it would be more economical for her and the heirs of her deceased husband to obtain a judgment sending her and the heirs into possession of the estate unconditionally, and recognizing her as the owner of half of the community property and as usufructuary of the other half, and recognizing the heirs of her husband as owning the other half of the community property, subject to the usufruct in favor of the widow. She annexed to her answer to this suit a copy of the agreement signed by her and the heirs of her deceased husband on June 17, 1941, and she averred that she made the same a part of her answer, “as if fully written herein”. She annexed also to her answer a copy of her husband’s will and averred that she made the will a part of her answer “as if fully written herein”. She averred also in her answer that the agreement dated June 17, 1941, was entered into in order to carry out the terms of the will, and was ' filed for record “within a few minutes aft
 
 *685
 
 er the judgment in the succession proceedings” was filed.
 

 The record therefore convinces us that the widow and heirs of John L. Garrett did not intend, by the agreement which they signed on June 17, 1941, that she should have any greater right in the Sherman Place than the ownership of one-half and the usufruct of the other half interest, inherited by the heirs of the deceased. As usufructuary, the widow did not acquire title to the mineral rights, or mineral wealth, in the 3/10 interest inherited by the heirs of the first marriage of John L. Garrett in the 80 acres of land leased to the Gulf Refining Company. Rev.Civ.Code, arts. 533 and 552.
 

 The widow averred in her answer to this suit that at the time of the death of her husband a tract containing 20 acres, forming part of the Sherman Place, and adjoining on the north side the 80 acres leased to the Gulf Refining Company, was under lease to the Ohio Oil Company and had one or more shallow wells thereon, and that immediately after the signing of the agreement between her and the heirs of John L. Garrett, dated June 17, 1941, all of the heirs of John L. Garrett signed, a division order, 'or transfer order, authorizing and directing the Ohio Oil Company to pay to her all of the royalty for oil that might thereafter be produced from the 20 acres of land, thus, — as she avers, — “clearly demonstrating that it was their intention that your respondent should receive the oil royalties from the Sherman Place under the agreement- that she should receive the revenues from the Sherman Place.” The shallow wells drilled by the Ohio Oil Company on the 20 acres were producing oil previous to and at the time of the death of John L. Garrett. They were producing there only small quantities of oil and produced very little if any oil after his death. As the wells of the Ohio Oil Company were in operation at the time when the usufruct in favor of the widow of John L. Garrett was created, it is not disputed that she was entitled, as usufructuary, to any royalties owed by the Ohio Oil Company for oil produced thereafter under that lease; because, under article 552 of the Civil Code, a usufructuary has a right to the proceeds of an oil well on the land subject to the usufruct, if the well was already drilled and producing oil at the time when the usufruct was created or established. It is so provided in article 552 of the' Civil Code, thus: “The usufructuary has a right to the enjoyment and proceeds of mines and quarries in the land subject to the usufruct, if they were actually worked before the commencement of the usufruct; but he has no right to mines and quarries not opened.”
 

 That article ' is in harmony • with the proviso in article 533 of the Civil Code, defining usufruct, thus: “Usufruct is the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantages which it may produce,
 
 provided it be without altering the substance of the thing”
 
 [Italics are ours.]
 

 ■ In the case of Elder v. Ellerbe, 135 La. 990, 66 So. 337, it was held that the right
 
 *687
 
 of a possessor of land in good faith to retain the “products” of the land, under article 502 of the Civil Code, or to retain the “fruits”, under article 3453, if evicted by a plaintiff proving his ownership of the land, did not give the possessor in good faith the right “to extract the mineral oil and gas from the land and retain the proceeds.” In so deciding it was declared that the right of the possessor in good faith in such a case, under articles 502 and 3453 of the Civil Code, “cannot be greater than the right of a usufructuary”, and that a usufructuary had no right to open a mine, and hence no right to drill an oil or gas well, and to appropriate the proceeds to his own use, if the mine was not opened or the well not drilled at the time of the creation or establishment of the usufruct. That decision was affirmed in Jackson v. Shaw, 151 La. 795, loc.cit. 799, 92 So. 339, loc.cit. 341, where it was held that the defendant, even though he possessed the land in good faith, was obliged to account to the plaintiff, as owner of the land, for the oil produced therefrom by the defendant. The court declared: “And the fact is that, even if he had possessed in legal as well as actual good faith, he still would owe this accounting; since oil and other minerals taken from the land by a possessor in good faith continue to belong to the owner of the land, and therefore must be restored to this owner along with the land — unlike in that respect to fruits, which pass into the ownership of the possessor in good faith as soon as reduced to possession by him. Elder v. Ellerbe, 135 La. 990, 66 So. 337.”
 

 The ruling in Elder v. Ellerbe and in Jackson v. Shaw, that the production of mineral oil and gas is a mining operation, and the statement that it therefore comes under the provisions of article 552 of the Civil Code, referring to mines and quarries, is founded upon the several statutes declaring that the production of mineral oil or natural gas is a mining operation. We refer particularly to Section 2 of Act 144 of 1908 and to Section 2 of Act 254 of 1910, declaring that the supervisor of minerals shall see that all of the laws pertaining to mining,
 
 particularly those pertaining to the drilling of wells and the piping and consumption of natural gas and oil,
 
 are faithfully carried out.
 

 In the case of Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 So. 867, 869, after a review of the statutes on the subject, it was declared: “From the above summary of the laws of 1908 and 1910, all referring to the subject of minerals, gas, oil, etc., we are forced to the conclusion that the Legislature has now classified oil and gas as minerals; and [has declared] those who are engaged in extracting them from the earth to be engaged in mining pursuits.”
 

 And near the end of the opinion'rendered in that case, the court, referring to Act 196 of 1910, declared: “In view of the language used, we are constrained to hold the production of oil to be a mining pursuit.”
 

 One of the arguments urged in support of Mrs. Garrett’s claim, that she is entitled to all of the royalties from oil produced from the well drilled on the 80-acre tract after the agreement dated June 17,
 
 *689
 
 1941, was entered into, is that the royalty on oil or gas, in a mineral lease, is rent, and that rent is revenue. The argument refers to the third paragraph in article 545 of the Civil Code, where it is declared: ■“Civil fruits are rents of real property, the interest on money, and annuities.” But the word “rents” as used in that paragraph means the rent of a farm or house, — not the royalty stipulated in a mining lease; otherwise the paragraph would conflict with article 552 of the Civil Code, referring to the right of a usufructuary with regard to the “proceeds of mines and quarries.” And it would conflict with the proviso in article 533, defining “usufruct”, and limiting the right of the usufructuary to “all the profit” of the property subject to the usufruct,
 
 “provided it be without altering the substance of the thing.”
 
 [Italics ours.] The cases cited to support the argument for Mrs. Garrett in that respect are Logan v. State Gravel Co., 158 La. 105, 103 So.. 526, and Board of Commissioners of Caddo Levee District v. Pure Oil Co., 167 La. 801, 120 So. 373, and several other decisions, maintaining that the royalty stipulated in a mining lease is considered rent. Notwithstanding the royalty stipulated in an oil or gas lease may be considered as rent for certain purposes, or in some aspects, it is well settled now that the royalty stipulated in an oil or gas lease is not to be compared with the rent of a house or a farm. It is true that in the case of Gulf Refining Co. v. Glassell, 186 La. 190, 171 So. 846, 850, it was declared that a mineral lease, for the production of oil or gas, and a lease of a farm, should be placed in the same legal category, that is, as leases, conferring “personal rights and not real rights.” But the holding in that case was abrogated by the Legislature at its next session, by Act 205 of 1938, declaring that oil and gas leases and the rights resulting therefrom “are hereby defined and classified as real rights and incorporeal immovable property.” In the case of Amerada Petroleum Corporation v. Reese, 195 La. 359, 368, 196 So. 558, the court quoted with approval from Allison v. Maroun, 193 La. 286, loc.cit. 291, 190 So. 408, loc.cit. 409, the following observation : “It is a matter of general knowledge, and is conceded by all parties to this suit, that the cause which induced the Legislature to enact Act No. 205 of 1938 was the decision in Gulf Refining Co. v. Glassell, 186 La. 190, 171 So. 846, that the holder of a mineral lease had not a real right on the leased land and therefore could not institute successfully a petitory or possessory action. That the statute was enacted in consequence of that decision is emphasized by the provision in the second section, that the act shall apply as well to leases made previous to the passage of the act as to leases made afterwards.”
 

 Therefore the ruling in Logan v. State Gravel Company and in like cases, maintaining that the royalty stipulated in oil and gas leases is to be considered as rent, is not applicable to this case.
 

 Counsel for Mrs. Garrett cite the case of J. M. Guffey Petroleum Co. v. Murrel, Tax Collector, 127 La. 466, 53 So. 705, where it was held that a “mining operation” had to do with the working of a mine, and that an
 
 *691
 
 oil well was not a “mine” within the meaning of article 230 of the Constitution, of 1898, exempting property employed in mining operations from parochial and municipal taxes for a period of ten years. But the decision was based expressly. upon the rule that statutory exemptions must be strictly construed. The decision was rendered in 1910, since which time it is well settled that the drilling or operating of an oil or gas well is a mining operation.
 

 The fact that the mineral lease of the 80 acres to the Gulf Refining Company was made before the death of John L. Garrett, and hence before Mrs. Garrett acquired the usufruct of the half interest inherited by the heirs of John L. Garrett, does not entitle her to the heirs’ share of the royalty on oil produced from the well drilled subsequent to the creation or establishment of the usufruct in favor of Mrs. Garrett. One reason for that is that the granting of the lease, although it gave to the lessee the right to drill on and produce oil from the leased premises after the death of the lessor, did not direct or indicate how or to whom any royalty that might become due or payable for oil produced from a well drilled subsequent to the death of the lessor should be paid. Besides, the well drilled on the 80-acre tract by the Gulf Refining Company was not drilled within the original term of the lease. The five year term of the lease expired on March 23, 1942. A few days before that date the Gulf Refining Company obtained from the widow and all of the heirs of John L. Garrett a written agreement authorizing the company to make the necessary pooling or unitization contracts for drilling on the 80 acres, and for that purpose allowing the company a period of 30 days in which to begin the drilling of a well on the 80 acres. The agreement was signed by the widow and heirs on different dates in the month of March 1942, namely, on the 4th, 10th, 11th and 12th day of that month; and the agreement was signed and accepted by the Gulf Refining Company on March 20, 1942, which was only three days before the lease would have expired. The company commenced the drilling of the well on April 4, 1942, and completed it as a commercial producer on May 10, 1942; that is, nearly a year after the widow acquired her usufruct on the half interest belonging to the heirs of John L. Garrett, on the 80 acres of land.
 

 Mrs,. Garrett, in her answer to this suit, refers to the fact that her three sons and three daughters signed a division order, or transfer order, authorizing the Gulf Refining Company to pay to her their share of the royalty from the oil produced on the 80 acres, and that under the terms of the division order, or transfer order, she is receiving their share of the royalty. That may show how the sons and daughters of Mrs. Garrett have construed her rights, under the agreement dated June 17, 1941;. but that construction is not binding upon-the heirs of John L. Garrett by his first marriage. They declined to sign a transfer order, or division order, with reference to the royalties from the 80-acre tract.
 

 Mrs. Garrett’s plea that the heirs of the first marriage of her husband, by signing the transfer order, or division order, au-l
 
 *693
 
 thorizing the Ohio Oil Company to pay to her all of the royalty that might thereafter he produced from the" 20-acre tract, “clearly demonstrates” that it was their intention that she should receive all of the royalties that might thereafter he due for oil produced from any part of the Sherman Place, is not well founded. On the contrary, the fact that all parties deemed it necessary that the heirs of John L. Garrett should sign a transfer order, or division order, authorizing the Ohio Oil Company to pay all of the royalty from oil produced from the 20-acre tract, is an indication that all of the parties considered that without such an ■order from the heirs of John L. Garrett the Ohio Oil Company would have no authority to pay their share of the royalty to the widow; otherwise they would have ■considered the agreement dated June 17, 1941, sufficient authority for the Ohio Oil Company to pay to the widow all of the royalty due for oil thereafter ■ produced from the 20-acre tract. This is particularly obvious when we consider that the well drilled by the Ohio Oil Company on the 20-acre tract was producing oil before and at the time of the death of John L. Garrett, — and when we consider that there is therefore no dispute about the right of the widow to collect and appropriate to her own use and benefit all royalties which the Ohio Oil Company owed for oil produced from the 20-acre tract after the usufruct was created.
 

 Our conclusion is that the judgment rendered by the district court in this case is correct and should have been affirmed.
 

 The judgment of the court of appeal is annulled and the judgment rendered by the district court is reinstated and affirmed. The costs of this proceeding are to be paid out of the fund deposited by the Gulf Refining Company in the registry of the court.
 

 PONDER, J., dissents.