^LUCIEN C. BERTRAND, Jr., Judge Pro Tem.
This dispute arises out of the sale of a vacuum truck business on April 30, 1986. The seller, Tramonte, Inc., transferred certain accounts as well as the exclusive right to use the name “Bayou Mr. Rooter” and/or “Mr. Rooter” to Palermo Brothers, Inc. Under the terms of the contract, the buyer agreed to compensate the seller the sum of $280,000, payable in 11 installments over six years. The contract also contained a non-compete agreement in which the owners of Tramonte, Inc., Vito and Elda Tramonte, “jointly and severally” agreed that Rthey would not engage in competition with the business of the buyer for a period of five years.
The contract was signed by Vito Tramonte as president of Tramonte, Inc. and then by Vito and Elda individually. Robert F. Palermo signed the document as President of Palermo Brothers, Inc. and individually; Paul V. Palermo signed his name individually. On that same date, the parties also entered into several other agreements which will be discussed more fully below.
Elda Tramonte and Tramonte, Inc. filed this suit when Palermo Brothers, Inc. failed to make the installment that was due on April 15, 1990. (Vito died on October 11, 1988). Named as defendants were Palermo Brothers, Inc., Robert F. Palermo and Paul V. Palermo, as well as the wives of the two Palermo brothers. In its answer, the defendant corporation included a reconventional demand for damages resulting from the *663 plaintiffs’ alleged breach of the non-eompete agreement.
After trial on the merits, the district court rendered judgment in favor of Elda and the Tramonte corporation and against Palermo Brothers, Inc., Robert F. Palermo, and Paul V. Palermo, in solido, in the amount of $120,-000, together with interest from the due date of each installment. The reconventional demand was dismissed.
The defendant corporation and Robert F. and Paul V. Palermo have appealed. The issues presented for our review include whether the trial court erred in rendering a personal judgment against the two Palermo brothers and, if not, whether the Palermo brothers were bound in solido with the defendant corporation. IsThe defendants also contend that the trial court erred in granting judgment in favor of Elda Tramonte individually.

PERSONAL LIABILITY OF PALERMO BROTHERS

The body of the contract does not contain any language concerning the personal liability of the two Palermo brothers. The words “jointly and severally” appear only in connection with the non-compete obligations of the Tramontes and not with the buyer’s obligation to pay the purchase price. However, Robert F. Palermo’s signature appears twice on the document, first as president of Palermo Brothers, Inc. and second above the word “Individually;” Paul V. Palermo’s signature appears once, also above the word “Individually.”
The parties also contemporaneously executed several other documents, including:
1) A cash sale of office equipment and machines that was signed by representatives of the two corporations only;
2) A lease of the business place which lists Palermo Brothers, Inc., Robert F. Palermo and Paul V. Palermo, all as lessees, thus indicating personal liability on the part of the individuals;
3) A lease of trucks nos. 16, 20 and 21 and a 1982 pickup, as well as a contract to buy and sell the same trucks. The lease was signed by the corporations alone; however, the contract to buy and sell the trucks was signed by Palermo Brothers, Inc. and the two brothers;
4) A lease of trucks nos. 1, 2, 15 and 17 that was signed by the two corporations alone and a contract to buy and sell these same trucks that was signed by Palermo Brothers, Inc. as purchaser and by Robert F. and Paul V. Palermo.
Another instrument entered into the record is of such importance that it prompts us to carry its full text as follows:
*664 [[Image here]]
*665 lüMichael Terranova, cousin, bookeeper and accountant to both Vito Tramonte and the Palermo brothers, prepared the documents. He explained that the actual cash sale of the trucks was delayed to accommodate tax considerations and that the guaranty of Joseph Palermo (father of the Palermo brothers) was obtained to satisfy the demands of the Tramontes for assurance that the purchase price would be paid.
Agreements, of contemporaneous date, some making reference to the others must be construed together, and, thus construed, what is doubtful in one may be made clear by what is found in the other. Isador Bush Wine & Liquor Co. v. Wolf, 48 La.Ann. 918, 19 So. 765 (La.1896). See also La.C.C. Art. 2053.
Considering the various contracts and documents executed on the same date, all leading to the consummation of the sale contemplated by the parties, we see what appears to be a clear intention on the part of the Palermo brothers to be bound personally whenever the credit aspects of the transaction are not otherwise secured.
Article 2045 of the Civil Code directs us to endeavor to ascertain the common intention of the parties to the contract, where there is anything doubtful in their agreement. In ascertaining their intention (when it cannot be adequately discerned from the contract as a whole) the circumstances surrounding the parties at the time of contracting are a relevant subject of inquiry. Cooley v. Meridian Lumber Co., 195 La. 631, 197 So. 255 (La.1940); La.C.C. Arts. 2045, 2046 and 2053.
In such a situation, it is proper to use extrinsic evidence and parol testimony. Starke Taylor & Sons, Inc. v. Riverside Plantation, 301 So.2d 676 (La.App. 3d Cir.1974); Capizzo v. Traders and General Insurance Co., 191 So.2d 183 (La.App. 3d Cir.1966); Gulf Refining Co. v. Garrett, 209 La. 674, 25 So.2d 329 (La.1946).
IfiThe act of signing the contract by the two brothers with the word “Individually” thereunder is a circumstance to be considered in determining the intent of the signatories.
Elda Tramonte testified (without objection) that she would not have signed the agreement if Robert and Paul Palermo had not personally signed the contract.
Robert and Paul Palermo both testified that during the negotiations no one spoke of their personal liability. They had no explanation for their individual signatures.
Michael Terranova, who prepared the various documents, testified that he used forms on hand from a previous unrelated sale. He believed that he was representing the Tra-montes because they paid his fee. He testified that, with the exception of the Joseph Palermo letter of guaranty, he could not recall any discussion of personal liability. However, he did say that he suspected that Vito Tramonte wanted the individual signatures on the agreement to assure payment.
The credibility of the Palermo brothers is suspect. They testified that they had no knowledge of the distinction between individual and corporate liability, yet, they were careful to limit the personal liability of then-father Joseph.
The trial judge, in his written reasons, made the following factual finding: “After hearing the testimony of the parties, it is this court’s opinion that the defendants clearly understood that they could be held personally liable under the terms of the contract.”
It is well settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We find no error in the trial court’s decision to hold the Palermo brothers personally liable on the contract.

SOLIDARY OBLIGATION

Robert and Paul Palermo next argue that the trial court erred in holding that they were solidarily bound with Palermo Brothers, Inc. under the terms of the contract. We disagree.
La.C.C. Art. 1796 provides: “Solidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties’ intent or from the *666 law.” The words “in solido” do not have to appear in the contract. It is sufficient if all of the essential elements of an obligation in solido are present. It is sufficient if there is an expression which clearly shows that they intend that each one shall be separately bound to perform the whole of the obligation. Wilks v. Allstate Insurance Company, 195 So.2d 390 (La.App. 3d Cir.1967).
An example of a clear expression of intent can be found in La.R.S. 10:3-118(e), which prior to 1994 read: “When an instrument containing the words T promise to pay’ is signed by two or more persons, they are deemed to be jointly and severally liable thereon.” The phrase “jointly and severally liable” is a common law term interpreted by our courts to be equivalent to liability “in solido.” Gavin v. Superior Applicators, Inc., 484 So.2d 792 (La.App. 1st Cir.), writ denied, 487 So.2d 439 (La.1986); Shreveport Bank & Trust Co. v. Tyler, 275 So.2d 451 (La.App. 2d Cir.1973).
The body of the contract under consideration is silent as to any expression of intent. However, we find that the accompanying signatures of Robert and Paul Palermo over the express writing “Individually” is tantamount to “I promise to pay” and cannot be interpreted in any manner except as an intent |sto be bound solidarily. See Evangeline Federal Savings & Loan v. Catha, 520 So.2d 1314 (La.App. 5th Cir.1988).
The trial judge found as a matter of fact the solidarity of the obligation, and this finding is manifestly correct. The evidence taken as a whole proves that the defendants intentionally bound themselves in solido for the amounts due in installment payments under the agreement.

ELDA TRAMONTE’S RIGHT TO STAND IN JUDGMENT

The defendants next argue that Elda Tramonte, individually, is not entitled to judgment against any of the defendants. We agree.
The contract does not give Elda or Vito Tramonte any right to share in the proceeds of the installment payments. The only rights or obligations personal to either Elda or Vito concern their obligation not to engage in the business of the buyer for five years. When asked why she signed the agreement, Elda answered: “I was individually bound that I could not go into business as competition to the people that we sold our business to ....” This was the only reason indicated for the individual signatures of Elda and Vito.
In their briefs, the parties discuss the propriety of Elda inheriting the rights of Vito. However, Vito had no rights to the proceeds, and no evidence was offered to show that Elda was in fact Vito’s heir. The exception as to Elda’s right to stand in judgment should have been sustained. The judgment should have been rendered in favor of Tra-monte, Inc. only.
For the above reasons, the judgment of the trial court is amended such that it is in favor of Tramonte, Inc. only. In all other respects, the judgment is affirmed.
AFFIRMED AS AMENDED.