Statement of the Case.
O’NIELL, J.
This suit was brought to recover the value of forest timber cut and taken by the defendant from a tract of land of which the plaintiffs claim they are part owners. The claim of one of them was adjudged barred by the prescription of one year, and he did not appeal from the judgment. The other plaintiffs obtained judgment for a sum less than they sued for; and, from that judgment, the defendant alone appeals.
Appellant makes three defenses to the suit, viz.:
(1) That the plaintiffs’ .petition does not set forth a cause or right of action.
(2) That defendant owned the timber taken from the land in contest, having acquired it by mesne conveyances from the owner of the land; and, in support thereof, that the title is perfected by prescription of 10 and 30 years.
(3) That defendant was a possessor in good faith, and, as such, should not be required to account for timber cut and taken from the land, even if the plaintiffs were the owners of it.
Opinion.
[1] The exception of no cause or right of action is founded upon appellant’s contention that a suit for the value of forest timber cut and taken by the defendant, being an action in damages for trespass, cannot be maintained except in one of two forms, viz.: (1) As a possessory action, by one who has been in actual possession of the land continuously for more than a year, and who was disturbed in his possession within a year before the filing of his suit; or (2) as an incidental demand in a petitory action for recognition of title to the land itself.
Counsel for appellant cite several decisions to support the argument that a landowner who is not in possession and has not been in possession of his land for more than a year cannot maintain an action solely to recover the value of timber cut and taken from the land. We deem it unnecessary to refer to the titles of the cases cited, because none of them supports the argument, even by inference. Some of the de *99 cisions are merely that an action of this character may be maintained by a possessor under the conditions required for the possessory action, without putting his title at issue; but it does not follow, from those decisions, that an owner, not in possession of his land, cannot maintain an action for the value of timber cut and taken from the land, on the allegation and proof of his title, without praying also for recognition of his title to the land itself. Many of the decisions cited are contrary to appellant’s contention. They hold that an action of this kind, solely for the value of timber alleged to have been cut and taken by the defendant, may be maintained either by a possessor having the right to a possessory action, or by an owner having the right to a petitory action. No argument has been advanced — and we know of no reason — why the plaintiff in an action of this kind should have to pray for a judgment against the defendant decreeing the plaintiff to be the owner of the land. On the contrary, a very good reason is suggested why the plaintiff in an action like this should not have to pray for recognition of his title to the land; that is, that it might serve no purpose. In this suit, for example, the defendant claims to have bought only the timber growing on the land and claims no interest in the land itself. In Burton-Swartz Cypress Co. v. Baker-Wakefield Cypress Co., 143 La. 686, 79 South. 221, we held that an action of this character might be maintained on the allegation and proof of plaintiff’s ownership of the land without his praying for recognition of his title to the land.
[2] The plaintiffs here brought two suits, in which they, respectively, claimed distinct interests in the land from which the timber is alleged to have been cut and taken away. The suits were, by consent of all parties, consolidated and tried as one. In their petition in one case the plaintiffs set forth a chain of title tracing back to the government. In the other case, the plaintiffs alleged that they were part owners of the land and stated what interest each claimed, but did not disclose a chain of title. The defendant, before answering, prayed, in both suits, for oyer of the title deeds upon which the plaintiffs would rely. Copies of the deeds were furnished by the plaintiffs, in response to the court’s order, and, by agreement of all parties, the copies were filed' in another suit, a petitory action brought by these plaintiffs against a party in possession claiming title to the land. We doubt that it is necessary for a plaintiff in an action of this character to set forth his title in detail unless or until the defendant demands it; because the defendant, in his answer, might deny having taken timber from the land described in the plaintiff’s petition, and his title therefore might not become an issue in the case. Be that as it may, by the consolidation of the two suits, in which the issues were identical, and by the production of the title deeds relied upon alike by the plaintiffs in both suits, the defendant was informed, before answering the suits, of the title relied upon by the plaintiffs; and there was then no force in the defendant’s complaint that the plaintiffs in one of the suits had not set forth their title. The exception of no' cause or right of action was therefore properly overruled.
We come then to the question of plaintiffs' title to the land and the pleas of prescription invoked by the defendant. The title relied upon by the plaintiffs is the same that was recognized in favor of two of them as plaintiffs in the suit of Dominique Harang et al. v. Golden Ranch Land & Drainage Co., 143 La. 982, 79 South. 768, for an adjacent tract of land. For convenience, therefore, we refer to the printed sketch appearing in the report of that case, for a better understanding of the issues presented here.
*101 The tract of land of which the title is now in dispute is described as bounded on the north by the 80-arpent line (dividing this tract from the tract that was in contest in the Golden Ranch Case), on the east by the line bearing N. 9° W., on the south by the '40-arpent line, and on the west by lot 46 of the Bourgerol Plan.
The defendant, as to the timber, attempts to trace title from Mrs. Louis Charbonnet, who, in 1812, acquired title to a large area of land lying on both sides of the line bearing N. 9° W., extending from the Bayou Vacherie down to the 40-arpent line (a line drawn parallel with and 40 arpents north from Bayou Lafourche), and embracing the land in dispute.
On the 17th of November, 1813, Mrs. Charbonnet sold to three Livaudais brothers (Philip, Joseph, and Charles) that part of her land lying west of the line bearing N. 9° W. and embracing the tract now in dispute, as well as that which was in contest in the Golden Ranch Case. The deed was recorded in the office of a notary public in New Orleans on the 27th of December, 1813, but was not then recorded in the parish of ■Lafourche, where the land is situated. The document, however, was later copied by the notary into a deed made by Charles Livaudais, conveying his third interest in the land to his brother Joseph, and that deed was recorded in the parish of Lafourche on the 19th of July, 1839. The deed whereby Mrs. Charbonnet had sold to the three Livaudais brothers the land in dispute in this case (and that which was the subject of the Golden Ranch suit) was put on record separately in the parish of Lafourche on the 14th of December, 1912, only six weeks before this suit was filed. The plaintiffs have a complete chain of title to the land in dispute, through mesne conveyances, from the Livaudais brothers, as was proven and adjudged with regard to the land in contest in the Golden Ranch Case.
The remaining land of Mrs. Oharbonnet, lying south of Bayou Vacherie and east of the line bearing N. 9° W. (separating it from the tract now in dispute and from that which was in contest in the Golden Ranch Case), remained hers until she died, and no disposition appears to have been made of it until the 9th of October, 1843. On that date one of her three heirs sold his third interest in the land to his brother-in-law; and thereafter transfers of the several ’interests in the property were made from one to another person until the whole was acquired by one Oscar Lepine, by a tax sale and auditor’s deed dated the 23d of July, 1874.
None of the deeds, from the transfers by the heirs of Mrs. Oharbonnet down to and including the tax sale or auditor’s deed to Oscar Lepine, conveyed or described the land now in dispute, or the tract that was in contest in the Golden Ranch Case. On the contrary, those lands were plainly excluded, by the declaration in the deeds that the land conveyed was bounded by the land of the Messrs. Livaudais, and by a declaration that the description was according to a plan of survey made by A. H. Rightor, deputy surveyor; which survey showed that the line bearing N. 9" W. separated the land conveyed to Oscar Lepine from the tract previously sold by Mrs. Oharbonnet to the three Livaudais brothers.
[3] Our study of the record in this case confirms the conclusion we reached in the Golden Ranch Case, that Oscar Lepine had no title whatever to the land then or now in dispute. The defendant, however, relies upon the following chain of title deeds, emanating from Oscar Lepine, in support of the plea of prescription of 10 years:
Oscar Lepine sold to Tresimond Eoret, by authentic deed dated the 26th of April, 1880, and recorded on that day in the conveyance records of Lafourche parish, a tract of land described as follows, viz.:
*103 “All that portion of the following described tract of land lying and being situated in front of the eighty-arpent line from Bayou Lafourche, and comprised between the Bayou Vacherie and Harang’s Canal, to wit:
“A certain tract of land known and designated as the Vacherie Charbonnet, comprising twenty thousand and sixteen arpents and fifty-six hundredths of an acre in superficies, situated in the parish of Lafourche in this state, and bounded by the Bayou La Vacherie, which separates it from the plantation now or late of Charles .Derbigny and which is navigable as far as Lake Washa or Barataría; by Bayou Catahoula; and' by lands now or lately belonging to Enoul Dugue Livaudais; the whole according to plan of A. H. Rightor, deputy surveyor.
“For the title of the vendor to the property herein conveyed reference is hereby made to the following records in this (the recorder’s) office, to wit: Conveyance Book No. 16, pp. 64 to 65, same book pp. 245 to 248, and same book pp. 429 to 431.”
It is argued that the foregoing description embraces the land in dispute because of the expression in the first paragraph:
“Lying and being situated in front of the eighty-arpent line from Bayou Lafourche and comprised between the Bayou Vacherie and Harang’s Canal.”
If that were all of the description, we might understand the words “comprised between” to mean “bounded by”; or we might take the word “comprised” to mean “composed of all,” or “embracing all,” or “consisting of all”; for the word “comprising,” without further qualification in a land description, would mean “composed of” or “consisting of.” In Hoskins Mfg. Co. v. General Electric Co. (D. C.) 212 Fed. 422, it was said that, although the word “consist” was a more specific term than “comprise,” the question before the court was whether the terms “consisting of a strip” and “comprising a strip,” as used in a patent claim, had been construed by the examiner and the patentee as synonymous terms; and, concluding that the parties had so regarded the terms, the court adopted their construction.
In this case, however, there is little or no room for construction. The vendor sold only “that portion of” a well-defined and specified tract of land that was “comprised between the Bayou Vacherie and Harang’s Canal” — not all of the land comprised between the bayou and the canal. And the tract specified, although it was, in a sense, comprised between the bayou and the canal, did not embrace the land now in dispute. The boundaries given, and the reference to the plan of survey made by A. H. Rightor, in the second paragraph of the description, are controlling, in that respect, and leave no doubt that the expression, “comprised between” the bayou and the canal, did not mean comprising all of the land between those limits. It might as well be argued that, if the vendor had said that the portion of the specified tract that he sold was “compromised within the parish of Lafourche,” instead of saying “situated in the parish of Lafourche,” he would have meant to convey all of the land in the parish — not merely that portion of the specified tract that was included or comprised within the parish lines.
The reference to “Conveyance Book No. 16, pp. 64 to 65, pp. 245 to 248, and pp. 429 to 431, for the title of the vendor to the property conveyed,” in the third paragraph of the description, refers to the following deeds, respectively, viz.: (1) The auditor’s deed confirming the tax sale to Oscar Lepine, dated the 17th of December, 1874; (2) an act of ratification or confirmation of the tax sale, by Edgar Lebeau (in whose name, with that of Charbonnet, the land had been assessed and sold), dated the 15th of May, 1874; and (3) a deed by the widow of A. B. Charbonnet conveying to Lepine her half interest (whether more or less) in the remaining land of the estate of Mrs. Louis Charbonnet, dated the 2d of October, 1875. In none of those deeds does the description include the land in dispute. In the auditor’s
*105 deed, purporting to confirm the tax sale, the description is very vague and indefinite; and in the other two deeds reference is made to the Rightor survey, plainly excluding the land now in dispute.
Tresimond Foret sold the land to Joseph Boudreaux, on the 15th of August, 1S92, by the same description by which he had bought it from Oscar Lepine; and Joseph Boudreaux sold an undivided half interest in the land, by the same description, to Ernest Foret, on the 25th of July, 1899. That is the latest of the deeds that were more than ten years old, in the defendant’s chain of title, when service of citation was had in this suit. And, as none of the deeds purports to convey title to the land in dispute, none can be the basis of prescription of ten years.
The next transfer, in the defendant’s chain of title, is an act of sale by Joseph Boudreaux and Ernest Foret to William R. Taylor (defendant’s author in title), dated the 3d of February, 1903. The description in the deed includes the land now in dispute; but the petition and citation in this suit were served upon the defendant on the 29th of January, 1913, that is, within ten years from the date of the earliest deed upon which the defendant might have based a plea of prescription of ten years.
[4] Counsel for appellant virtually admit in their brief that the plea of prescription of ten years is not well founded. Admitting that ten years had not elapsed from the date of the Taylor deed to the date of service of citation in this suit, they say, “If the decision turned solely on prescription, the judge’s conclusion would be correct.” Then they say that the judge missed the point in the case; that the question is not one of perfecting a title by prescription, but of superiority of the defendant’s title by virtue of prior registry. In support of the argument, they cite the decision in McDuffie y, Walker, 125 La. 152, 51 South. 100, and Moore Planting Co. v. Morgan’s La. & T. Railroad Co., 126 La. 840, 53 South. 22.
The important distinction between the case before us and the eases cited is that in those cases the plaintiff and defendant both traced title to a common author, admitted to have been the owner of the land. Here it is admitted that Mrs. Louis Char-bonnet was once the owner of the land. The plaintiffs produce a complete chain of title from her; and the defendant’s title, as far as the land in dispute is concerned, emanated from Joseph Boudreaux and Ernest Foret, neither of whom had any title to the land in dispute.
The Moore Planting Co. Case (overruling Hollingsworth v. Wilson, 32 La. Ann. 1012) is authority for the proposition that, when two contesting claimants produce title deeds from one and the same former owner of the property, the holder of the deed recorded first, though later in date, has title to the property, notwithstanding there was an intermediate transfer from the first 'purchaser to a third person, from whom the other claimant acquired and recorded his deed before the second purchaser from the original owner recorded his. That doctrine might serve to destroy the effect of the recording of the deed from Mrs. Charbonnet to the Livaudais brothers on the 19th of July, 1839; because that deed was merely embodied in a later deed by one of the Livaudaises to another, which latter deed was recorded on that date; and the record was probably not indexed as a transfer from Mrs. Char-bonnet. That record' of the deed from Mrs. Charbonnet, however, may be disregarded, in our view of the case; because the defendant has no title from Mrs. Charbonnet, who is admitted to have been the owner of the property long before William R. Taylor (the defendant’s author in title) bought from Boudreaux and Foret, who had no title to the land in dispute. The question of priority of registry of title deeds does not enter *107 into a case where one of two contestants for the same land does — and the other does not — produce a title emanating from one who is admitted to have been the owner of the property.
[5] Referring to the prescription of 30 years, there is no proof — and it is not seriously contended — that any of the defendant’s authors in title had actual possession of the land 30 years, or ever had it fenced or inclosed. We adhere to the doctrine announced in Harang v. Golden Ranch Land & Drainage Co., 143 La. 982, 79 South. 768, that a person without an apparent title to land must have’ adverse possession for 30 years to deprive the owner of his title; for the owner does not, by mere failure to assert his title or manifest his ownership during a period of 30 years, forfeit his right of action to recover the property from one who, within 30 years, has taken possession of it. A majority of the members of the court expressed that opinion, in Generes v. Bowie Lumber Co., 143 La. 811, 79 South. 413, while the Golden Ranch Case was before us on rehearing.
[6] Having come to the conclusion that the defendant was not the owner of the timber taken from the plaintiffs’ land, we take up now the only remaining question to be determined; that is, whether a possessor who, in good faith but without a valid title, cuts and takes away forest timber from the land of another, is liable for the value of the timber. We take it for granted — for there is no dispute of the fact — that the defendant was in good faith.’
In support of their argument on this defense to the suit, the learned counsel for appellant refer us to the decisions in 1-Hood v. Stewart, 2 La. Ann. 219; Banks v. Doughty, 11 Rob. 483; and Leathern & Smith Lumber Co. v. Nalty, 109 La. 339, 33 South. 354.
In Hood v. Stewart, 2 La. Ann. 219, it was said that possession for more than a year created such a legal presumption of ownership as to authorize the possessor to exercise acts of ownership without exposing himself to an action for damages, and that the owner, not in possession, could not proceed against such possessor except by a petitory action, in which the claim of the owner for rents, and the counterclaims of the possessor, could be adjusted as incidents of the main action. The doctrine of the decision appears to be that an action for damages for trespass can be maintained, not by an owner without actual possession, but only by a possessor who has been in possession longer than a year. In that respect the decision cannot be reconciled with the later jurisprudence on the subject.
In Banks et al. v. Doughty, 11 Rob. 483, the court merely stated that the defendant had purchased the timber of persons who had settled upon the land claimed by the plaintiffs, without knowledge of the plaintiffs’ title, which was not recorded; and the court, therefore, without giving any further reason, merely affirmed the judgment rejecting the plaintiff’s demand for the value of the timber taken by the defendant. No legal principle was announced nor opinion expressed in the decision. The decree does not seem to have been well founded upon the statement of the case; and we do not consider it a good precedent for a ruling in the case before us.
In Leathem & Smith Lumber Co. v. Nalty, 109 La. 339, 33 South. 354, an erroneous interpretation of Dalloz & Vergefi, under article 550, Code Napoléon (No. 1), is given, to the effect that a possessor in good faith is not answerable to the owner for cutting and taking timber from his land. The French commentators, all excepting Marcadé, agree that it is only the “fruits” of the soil that the possessor in good faith need not account for; and that forest timber is not included in the term “fruits.”
*109 What gave cause for the discussion among the French writers, as to the meaning of the term “fruits,” is the fact that, in article 549, Code Napoléon, declaring that it is only the possessor in good faith who is not required to account for the fruits he has taken from the land of another, the words “fruits” and “products (produits)” are used as synonymous and convertible terms. And the same may be said of the corresponding provisions of the Louisiana Code.
The article of the French Code declares, in substance, that a mere possessor does not make the “fruits” his, except in the ease where he possesses in good faith; in the contrary case — i. e., if the possessor was in bad faith — he is required to return the “products (produits)” with the property to the owner who revendicates it. The corresponding provisions of the Louisiana Code are found in article 502, in the book on the subject of the methods of acquiring ownership, in the chapter treating “of the right of accession to what is produced by the thing”; and in article 3453 of the same book, in the chapter treating “of possession.”
Article 502 declares:
“The products of the thing do not belong to the simple possessor, and must be returned with the thing to the owner who claims the same, unless the possessor held it bona fide.”
Article 3453 declares:
“The rights, which are peculiar to the possessor in good faith, are: (1) The right which such a possessor has to gather for Ms benefit the fruits of the thing, until it is claimed by the owner, without being bound to account for them, except from the time of the claim for restitution. (2) The right which such a possessor has, in case of eviction from the thing reclaimed, to retain it until he is reimbursed the expenses he may have incurred on it.”
The text of article 549 of the French Code is:
“Le simple possesseur ne fait les fruits siens que dans le cas ou il possede de bonne foi: dans le cas contraire, il est tenu de rendre les produits avec la chose au proprietaire qui la revendique.”
The French commentators — all except Mareadé, who took a contrary view (volume 2, p. 399) — have expressed the opinion that the word “produits” in the second clause of the article is used as a synonym for “fruits,” as a matter of style of writing, merely to avoid repetition of the word “fruits.” See supplement to tome 2, Laurent, p. 333, where it is said that, apart from the dissenting opinion of Mareadé, the doctrine of the writers regarding article .549 is in harmony, including Hue, t. 14, No. 121. And the Court of Cassation, as well as all French commentators except Mareadé, has expressed the opinion that trees of full growth “not under regulated felling” are not among the “fruits” for which a possessor in good faith is not bound to account to the owner of the land. See Journal du Palais, 1837, vol. 1, p. 126, Cass. Dee. 8, 1836. See, also, Demolombe, t. 9, No. 662; Aubry et Rau, t. 2, p. 278, No. 206; Laurent, t. 6, No. 205; Duran-ton, t. 4, No. 350; Baudry-Lacantinerie, des Biens, p. 226, No. 391. Speaking of trees “under regulated felling,” the French writers refer to a method of felling timber so as to conserve it and obtain a regular income. See Aubry et Rau, vol. 2, p. 484, note 27.
The treatise by Laurent, t. 6, No. 205, criticizing the opinion of Mareadé as a paradox and an imagination of his, is as applicable to article 502 of the Louisiana Code, where the word “products” is used, as it is to article 549 of the French Code, where the words “produits” and “fruits” are used indiscriminately. We say that, because the only two preceding articles in that chapter, articles 547 and 548 of the French Code, correspond almost literally with articles 499 and 501, respectively, of the Louisiana Code. And, in both Codes, all that is said in that chapter, “Of the Right of Accession to What is Pro *111 duced by the Thing,” before the use of the word “products (produits),” has reference to “fruits,” properly so called; and they are there defined (in the articles immediately preceding 502,' R. C. C., 549 O. N.), as: (1) the fruits of the earth, whether spontaneous or cultivated; (2) civil fruits, meaning rents or revenues due under contract or by effect of the law; and (3) the young of animals— all of which “fruits” are declared to belong, by right of accession, to the owner of the property that produced them. Then follows article 502 (O. N. 549), making an exception in favor of a possessor in good faith. As Laurent says, this exception to the general rule must be construed strictly, with reference to the “fruits” spoken of in the preceding articles in the same chapter. To say that, although the owner of property is entitled, by right of accession, to the fruits, properly so called, a possessor in good faith is entitled to all kinds of products, including forest timber, would result in an absurdity. The object or purpose, in referring to the possessor of another’s property, in those provisions of the French Code and of the Louisiana Code, was to make a distinction between a possessor in good faith and one in bad faith — to give to the one, but not to the other, the fruits that would otherwise belong to the owner of the property, by the right of accession. That distinction loses its force if the word “products (produits)” has not the meaning of the word “fruits,” when the law-writer says that a possessor in good faith is not required to account to the owner for the fruits of the property, but the “products” of the property do not belong to a possessor unless he has possessed in good faith.
Laurent’s explanation, that the word “products,” after the use of the word “fruits,” was used merely to avoid using the same word in two consecutive lines — as a matter of style, “done quand la loi emploie le mot produits aprés s’étre servi du mot fruits e’est uniquement pour ne pas repSter le meme mot dans deux lignes qui se suivent —question de style,” is not applicable to the Louisiana Code, where the words “products” and “fruits” are used, respectively, in articles so far apart, articles 502 and 3453. But we have already had occasion to observe that the compilers of the Louisiana Code, in writing article 502, adopted the word “products” as a translation of “produits,” in preference to the other word, “fruits,” used as a synonym in article 549 of the French Code. And we have held that the word “products” in article 502 is synonymous with “fruits” in article 3453. See Elder v. Ellerbe, 135 La. 999, 66 South. 337. In that case it was decided that the right of a possessor in good faith, to retain the benefit of the fruits he had gathered from the property in his possession, did not include the right to retain the benefit of minerals that he had taken from the land. By way of analogy, we said it was well settled that a possessor in good faith, but without a valid title, had to account to the owner of the land for the value of forest timber cut and taken away by the possessor. We referred to the cases of McGee v. Louisiana Lumber Co., 123 La. 696, 49 South. 475; Ball Lumber Co. v. Simms Lumber Co., 121 La. 627, 46 South. 674, 18 L. R. A. (N. S.) 244; and Gardere v. Blanton, 35 La. Ann. 811. And to them we might have added the case of Guaranty Trust & Safe Deposit Co. v. Drew Inv. Co., 107 La. 251, 31 South. 736, and perhaps many others.
Counsel for the defendant here say that we were unfortunate in our citation of the decisions in support of the legal proposition announced in Elder v. Ellerbe; that a critical analysis of the cases cited discloses the startling fact that none of them touches the point; and that in none of them was there a question of the right of a possessor in *113 good faith. In each of the cases cited in Elder v. Ellerbe, the defendant was held to have been a possessor in good faith; he had bought and felled the timber, believing that his vendor had owned the land and timber at the time of the sale; the owner was not in actual possession of the land; yet he, as plaintiff, in each suit, like the case before us, was given judgment against the possessor for the value which the trees had had when they stood upon the land. In the case of Ball Lumber Co. v. Simms Lumber Co., the defendant’s mistake was due to an error in a survey or boundary line. But that does not make the doctrine announced less appropriate here, viz., that a person who, in good faith, believing he is the owner, cuts timber on the land of another, is liable for the value of the timber at the stump.
In Elder v. Ellerbe, we took occasion to say, too, that the right of a possessor in good faith, to gather for his own benefit the fruits of property belonging to another person, was not greater than the right of an usufructuary, in that respect; and that an usufructuary had no right to mines or quarries not opened. In that limitation of the rights of a possessor in good faith, we expressed the opinion of Laurent, and of all other French commentators except Mareadé, on similar provisions of the Code Napoléon. Laurent, t. 6, No. 205, says that the products (produits) referred to in article 549, C. N. (502, R. C. C.) are defined under the title, “Of Usufruct”; and that, as the products of mines and quarries are not considered fruits of the soil, so also forest timber or woods of full growth cannot be considered fruits. On that subject, article 551 of the Civil Code (taking the place of articles 590 and 591 of the French Code) provides explicitly that an usufructuary “may cut trees on land of which he has the usufruct, * * * but for his use only, and for the amelioration and cultivation of the land, provided he act in that respect as a prudent administrator, and without abusing his right.”
The learned counsel for appellant say in their brief, “trees are undoubtedly products of the land.” Yes; but they are not “fruits,” in the ordinary meaning of the word — especially in the sense in which the word is used in article 3453 of the Civil Code. For it is not likely that the framers of the Code, even before the day of pull boats and skidders, would refer to the ox-hauling of timber, or floating it out of the swamps in high water, in such dainty language as “gathering the fruits of the land.” Between the alternatives, therefore, of having to give the word “fruits” the broad and comprehensive meaning of all kinds of products of land, or give the word “products” the restricted meaning of fruits, properly so called, we adopt the latter.
Our conclusion is that the defendant, who, in good faith, but without a valid title, felled and took away the forest timber from the land of the plaintiffs, is liable for its value to the owners.
So far as the rulings in Banks v. Doughty, Hood v. Stewart, and Leathern & Smith Lumber Co. v. Nalty, relied upon by appellant, are in conflict with this decision, they are now overruled.
The amount of the judgment appealed from is not contested. During the trial, the parties to the suit, reserving all other contentions, admitted the quantity and value of the timber cut and taken by defendant from the land in contest. The judgment appealed from is in accord with the admission.
The judgment is affirmed.
DAWKINS, J., takes no part.