339 So.2d 519 (1976)
Succession of Floyd Delaney RUGG.
No. 13049.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1976.
Rehearing Denied December 6, 1976.
Writ Refused February 3, 1977.
John S. C. Massey, West Monroe, for appellant.
James M. Dozier, Jr., Farmerville, for appellee.
Before HALL, MARVIN and JONES, JJ.
En Banc. Rehearing Denied December 6, 1976.
JONES, Judge.
Floyd Delaney Rugg died intestate on September 11, 1975. His surviving spouse qualified as the administratrix of decedent's estate on October 17, 1975. On December 17, 1975, the decedent's six heirs filed a rule against the administratrix seeking to terminate the administration and to be sent into possession of decedent's estate. In the litigation which followed, a dispute arose between the heirs and the surviving spouse as to whether a sum of $11,500 on deposit in the bank was separate or community property. The administratrix also contested the heirs' right to terminate the administration *520 and be sent into possession for the reason the petition for possession failed to have attached an affidavit verifying the allegations, executed by at least one of them, as required by LSA-C.C.P. Art. 3002.
The trial court determined that the $11,500 was obtained from the sale of timber located on the separate property of decedent and was therefore separate property. The trial court held the heirs were entitled to be sent into possession of decedent's estate because three of them testified under oath in open court as to the correctness of the essential allegations of the petition for possession, and this sworn testimony provided substantial compliance with the requirement of C.C.P. Art. 3002. The administratrix appeals assigning as error: (1) the failure of the trial court to hold the funds derived from the timber sale were community property; and (2) the failure of the trial court to deny the heirs' petition for possession because it did not have attached the verifying affidavit required by C.C.P. Art. 3002. We affirm.
The administratrix contends that the proceeds of the timber sale from her husband's separate estate belonged to the community under the provisions of C.C. Art. 2402:
"This partnership or community consists of the profits [fruits][1] of all the effects of which the husband has the administration and enjoyment, either of right or in fact, . . .."
The thrust of her argument is that our Supreme Court in Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679 (1952) held that funds received by a husband from bonus, delay rentals and producing royalty payments under an oil and gas lease of property belonging to the husband's separate estate were fruits under C.C. Art. 2402 and therefore belonged to the community existing between the husband and wife. The administratrix argues that timber on the land and oil and gas under it are similar to each other, that the proceeds from the sale of timber is analogous to the proceeds received in connection with the mineral lease in Milling, and for that reason should be construed to be fruits within the contemplation of C.C. Art. 2402. The administratrix cites King v. Buffington, 240 La. 955, 126 So.2d 326 (1961), a Supreme Court decision holding that royalty, bonus and delay rentals proceeds from an oil, gas and mineral lease belonged to the naked owner of the property subject to the lease rather than to the usufructuary. In that case, the Milling rationale was urged upon the court on behalf of the usufructuary. The court there distinguished Milling on the grounds it involved an interpretation of what constituted community property under C.C. Art. 2402 and had no bearing on the issue presented in King v. Buffington i.e., the rights of the naked owner vs. the usufructuary. Although the administratrix admits that the term fruits has been construed not to include timber in several other articles of the Code, she argues that King v. Buffington impliedly approved the Milling interpretation, i.e., that fruits included royalty, bonus and delay rentals proceeds within the contemplation of C.C. Art. 2402, and that this broad approach to the definition of fruits should be extended to include timber. The rationale of Milling is that oil, gas and mineral leases have been traditionally considered nothing more nor less under our law than ordinary leases of property and the consideration received from a mineral lease has been considered rent in the same sense as rent received from an ordinary lease. In Milling the following language is found with reference to the analogy between mineral leases and ordinary leases:
"* * * [A]nd in a recent case we observed: `The rule is well established that mineral leases must be construed as leases, and that the codal provisions applicable to ordinary leases must be applied.' Coyle v. North American Oil Consolidated, supra, 201 La. [99] at page 114, 9 So.2d [473] at page 478 italics ours.
"Under this application of the law, it was inevitable that when the question arose *521 as to the nature of royalty, it was held to be rent in the form of a portion of the produce of the land, Logan v. State Gravel Co., supra [158 La. 105, 103 So. 526], and `not the payment of a price for the oil or gas rights, as if they were sold', Roberson v. Pioneer Gas Co., supra, 173 La. [313] at pages 319-320, 137 So. [46] at page 48; and the statement that the payment of royalty is the payment of rent appears so often in the jurisprudence of this State that the matter is no longer open to dispute. . . .
* * * * * *
"* * * This being true, we know of no compelling, reason, nor has any been advanced, why the rentals paid in the form of royalty under a mineral lease on the separate property of the husband should form a part of his separate income, whereas the rentals paid in the form of shares of the crops growing on the same land would fall into the community. . .." Id. page 682.
The Milling decision also recognized the concept that oil and gas are not owned until reduced to possession.[2] It held that all the proceeds from the lease were rent and the payment of which entitled the lessee to seek and possess the oil and gas. The rent so received was designated a civil fruit, belonging to the community under C.C. Art. 2402. The fact that King v. Buffington refused to extend the lease-rent theory of Milling to entitle the usufructuary to the mineral lease proceeds, as a civil fruit, in no way supports the claim that timber is a fruit.
Standing timber is an immovable subject to separate ownership apart from ownership of the land. LSA-R.S. 9:1103. The sale of timber is not analogous to a lease or rent situation and therefore Milling is not authority for holding that timber is a fruit under C.C. Art. 2402.
In Harang v. Bowie Lumber Company, 145 La. 96, 81 So. 769 (1919) the court held that the word fruits in C.C. Art. 3453 (which article provides that the good faith possessor is not required to account to the owner for the fruits) did not include timber. The Harang decision involved a situation where the owner of the land claimed the good faith possessor owed the owner for the value of the timber cut. The good faith possessor urged that timber was included within the meaning of the word fruits under C.C. Art. 3453, and therefore he did not owe the owner therefor. The court stated that the framers of the Code could not have considered timber as included within the term fruits, and said:
"* * * For it is not likely that the framers of the Code, even before the day of pull boats and skidders, would refer to the ox-hauling of timber, or floating it out of the swamps in high water, in such dainty language as `gathering the fruits of the land.' . . ." Id. p. 775.
The court reasoned that timber was not a fruit within the meaning of the usufructuary articles, pointing out that under the provisions of Code Art. 551 the usufructuary is authorized to cut trees from the land for his use only:
"* * * On that subject, article 551 of the Civil Code (taking the place of articles 590 and 591 of the French Code) provides explicitly that an usufructuary `may cut trees on land of which he has the usufruct, * * * but for his use only . . .." Id. at page 775.
In Steib v. Rathborne Land Company, Inc., 163 So.2d 429, (La.App. 4th Cir. 1964) writ refused June 8, 1964, the court stated:
"It may be appropriate here to observe that growing timber is not a `fruit' which would belong to the purchaser under LSA-C.C. Article 2575."[3]
Likewise, in Delcambre v. Dubois, 263 So.2d 96 (La.App.3d Cir. 1972) the court stated once again with reference to Art. 2575 of the Louisiana Civil Code as follows:
"However he is not entitled to things, such as timber, which are not fruits."
*522 The administratrix has cited no decision holding timber to be a fruit. Based upon the foregoing authorities, we affirm the trial court's holding that the proceeds from the sale of timber located on the husband's separate property do not fall into the community under the provisions of C.C. Art. 2402.
The administratrix also complains that the heirs have not followed the necessary procedural prerequisites for the termination of the administration. She states that LSA-C.C.P. Arts. 3362 and 3002 require one of the petitioners to verify the allegations of the petition by affidavit, a procedure not followed here.
The requirement of the sworn verification of the essential allegations by one of the heirs in a petition for possession has for its purpose the creation of proof in the record of the allegations of the petition. The allegations were proven by the testimony in open court by three of the petitioners and this satisfies the verification requirement.
For the foregoing reasons we affirm the judgment of the trial court. The Succession of Floyd Delaney Rugg is to pay all costs of this appeal.
NOTES
[1] [The commentators and the jurisprudence establish that the word profits is an incorrect translation from the French and should have been fruits].
[2] LSA-R.S. 31:5, 6.
[3] C.C. Art. 2575 provides that the vendee in a sale with the right of redemption is entitled to the fruits.