_[iSAUNDERS, Judge.
This is an appeal brought by plaintiffs-appellants, Julius L. Myers, individually and as administrator of the Estate of Julius J. Myers, Raymond V. Myers and Jimmy D. Chandler (Julius Estate), from the trial court’s judgment in favor of defendants-ap-pellees, Mary Marie Myers Chandler, individually and as administratrix of the Estate of Maude C. Myers (Maude Estate), Colfax Timber Company, Inc. and A. Dale Smith.
After our review, we affirm the findings of the trial court in part, reverse in part, amend in part and render.

*515
FACTS

Julius J. Myers and Maude Crawford Myers[1] owned, in community, approximately forty (40) acres of land located in Grant Parish, Louisiana. Julius J. Myers died intestate on July 18, 1984, with his wife, Maude Crawford Myers, surviving him. Julius J. Myers was survived by Mary Marie Myers Chandler, Julius L. Myers, Raymond V. Myers, Jimmy D. ^Chandler, and Carl Chandler. Jimmy D. Chandler and Carl Chandler are the surviving children of Evelyn Myers, a child of Julius J. Myers, who predeceased him.
This litigation arose out of an act of sale of timber dated February 28, 1989, by Maude Crawford Myers, individually, as owner of an undivided one-half (½) interest and on behalf of Julius J. Myers, as usufructuary over his undivided one-half (½) interest, to Colfax Timber Company, Inc. The consideration of the sale of the timber on the forty (40) acres was $36,500.00 which was paid to Maude Crawford Myers.
Maude Crawford Myers solicited competitive bids for the sale of the timber with Colfax Timber Company, Inc. being the highest bidder at $36,500.00. A contract was entered into between Maude and Colfax to cut the merchantable timber on the property. Colfax obtained and paid for a title opinion from Attorney A. Dale Smith to ensure that Maude had the legal right to execute a timber deed in favor of Colfax. Maude Myers escrowed certain funds obtained in the sale of timber to cover the eventuality that any third party would be entitled to any timber proceeds.
Following the commercial cutting by Colfax, this action was brought by Julius L. Myers,[2] Raymond V. Myers and Jimmy D. Chandler, as three out of the five surviving heirs of Julius J. Myers, against Colfax Timber Company, Inc., the Estate of Maude Crawford Myers[3] and Mary Marie Myers Chandler, Maude and Julius’ daughter.
Plaintiffs’ petition alleged that the defendants, through collusion, converted timber from the Estate of the late Julius J. Myers to Colfax at less than fair market value and that defendants, Mary Marie Chandler and Maude Myers, converted these funds to their own use. Plaintiffs also contend that the defendants had no authority to make this sale because the Estate of Julius J. Myers had not been opened and the timber was community property. Finally, it is alleged by plaintiffs that the defendants were, in fact, in bad faith. The plaintiffs use this bad faith argument and LSA-R.S. 3:4278.1, regarding the penalty for cutting trees without the consent of the owner or legal possessor, to pray for damages in the amount of three (3) times the fair market value of the trees cut.
Colfax reconvened against the original plaintiffs alleging that Colfax had ceased its timber operations due to interference from “Myers” and had been unable to remove any further timber or perform any other work on said property.
I ¡¡Colfax also filed a third party petition against the Estate of Maude Crawford Myers, Mary Myers Chandler and A. Dale Smith. Colfax named A. Dale Smith as a third party defendant based upon his title opinion, and the Estate of Maude Crawford Myers and Mary Myers Chandler were named third party defendants based upon warranty obligations in the timber deed which assumed responsibility for any attorney’s fees, costs or expenses incurred in the defense of the timber deed.
After the plaintiffs presented their case, the trial court granted a directed verdict in favor of the Estate of Maude Myers and Mary Chandler finding that there was no evidence of collusion, no evidence that Mary Chandler had exerted undue influence on her mother to induce her to sell the timber and finding that Maude Myers had the legal authority to sell the timber.
*516 Next, also on plaintiffs’ main demand, the trial court granted a directed verdict in favor of Colfax and against plaintiffs on the claim of collusion and the claim that Colfax had purchased the property for less than fair market value, finding no evidence on either claim.
Finally, on Colfax’s reconventional demand against the original plaintiffs, the trial court rendered judgment in favor of Colfax in the amount of $3,500.00 for timber which they had purchased but had not taken. Additionally, Colfax was awarded attorney’s fees in the amount of $2,250.00 against both the Julius and Maude Estates.[4] Third party defendant, Attorney A. Dale Smith, was found to be without liability insofar as the title opinion which he rendered was correct in that Maude had the legal right to sell the timber at issue.

ASSIGNMENTS OF ERROR

Appellants, Julius L. Myers, Raymond V. Myers and Jimmy D. Chandler, first argue that the trial court erred in finding that Maude Crawford Myers, as surviving spouse and usufructuary of the estate of her late husband, Julius J. Myers, had the right to sell the timber which was comprised of part of the community that existed between Maude and Julius J. Myers. Within this assignment, appellants argue that the trial court erred in finding that the title opinion rendered by Attorney A. Dale Smith, wherein Smith opined that Maude Myers possessed the legal authority to sell the timber at issue, was correct.
By its second assignment of error, appellants contend that the trial court erred in awarding Colfax $2,250.00 in attorney’s fees for the defense of this suit.
UNext, appellants contend that the trial court erred in awarding Colfax $3,500.00 for timber left uncut due to alleged threats. They contend that Colfax did not carry its burden of proving that it was threatened by plaintiffs.
Finally, appellants contend that the trial court erred in disallowing evidence of the cost of clearing and burning debris and reforesting the timber land and other associated damages.
We reverse that portion of the trial court’s judgment holding appellants hable in solido to Colfax for $3,500.00 for uncut timber; we amend to find only the Estate of Maude hable to Colfax for attorney’s fees in the amount of $2,250.00; and we affirm the remainder of the judgment of the trial court.

SALE OF TIMBER

The pivotal issue in this case is whether or not Maude Myers, as owner and usufructu-ary of the property at issue, lawfully conveyed the timber rights on the property to Colfax Timber Company. The solution revolves around the characterization of the timber revenues as “fruits,” i.e., renewable resources, or “products,” i.e., non-renewable resources.
This issue was recently before the Louisiana Supreme Court in Succession of Doll v. Doll, 593 So.2d 1239 (La.1992). In Doll, supra, the deceased father had three children. In March of 1978, he conveyed 468 acres to one daughter for $60,000.00 and died in August of the same year. The daughter accrued revenues from various activities on the property, including the sale of timber. In December of 1982, another daughter sought the return of the 468 acres to her father’s succession, together with the revenues produced, contending that the property was a donation in disguise pursuant to LSA-C.C. art. 2444.
Although Doll, supra, involved a collation issue, the relevant issue before the Doll court, for our purposes, was whether the revenues derived from the sale of timber constituted “fruits” of an immovable within the meaning of LSA-C.C. art. 551[5] or wheth *517 er the revenue should be characterized as a “product” within the meaning of LSA-C.C. art. 488.[6]
IsThe Louisiana Supreme Court stated in Doll, supra, at pp. 1244-45:
“In the absence of rights of other persons, the owner of a thing acquires the ownership of its natural and civil fruits by right of accession. La.Civ.Code Ann. art. 488 (West 1980). Prior to the effective date of Article 551,11 the jurisprudence, as well as doctrinal materials, indicated “fruits” was construed according to the context in which the issue of classification arose. See, e.g., Gueno v. Medlenka, 238 La. 1081, 117 So.2d 817 (1960) (usufruct); Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679 (1952) (taxation); Harang v. Bowie Lumber Co., 145 La. 96, 81 So. 769 (1919) (good faith possession); Elder v. Ellerbe, 135 La. 990, 66 So. 337 (1914) (good faith possession). See also A.N. Yiannopoulos, Personal Servitudes § 50, in 3 Louisiana Civil Law Treatise (3d ed. 1989); A.N. Yiannopoulos, Property § 42, in 2 Louisiana Civil Law Treatise (3d ed. 1991). Moreover, “products” was synonymous with fruits, leading the courts simply to differentiate fruits and non-fruits. Todd v. State, Dep’t of Natural Resources, 474 So.2d 430, 434 n. 5 (La.1985). See Harang, supra; Elder, supra; La.Civ.Code art. 502 (1870); A.N. Yiannopoulos, Personal Servitudes § 50. Finally, a unitary notion of fruits ensued with the enactment of article 551. See Expose’ des Motifs, Title III: Personal Servitudes, La.Civ.Code Ann. (West 1980); [Succession of Doll v.] Doll, 577 So.2d [802] at 805 [(La.App. 2d Cir.1991)] and the authority cited therein. Subsequently, the Civil Code distinguished fruits from products. See La.Civ.Code Ann. art. 488 (West 1980); 1979 La.Acts No. 180, § 1 (effective Jan. 1, 1980).
“The Civil Code defines products as having been derived from a thing as a result of diminution of its substance. La.Civ.Code Ann. art. 488. In contrast, La.Civ.Code Ann. art. 551 (West 1980) provides:
Fruits are things that are produced by or derived from another thing without diminution of its substance.
There are two kinds of fruits; natural fruits and civil fruits.
Natural fruits are products of the earth or of animals.
Civil fruits are revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions.
In brief, “product” connotes irreversible diminution whereas “fruit” suggests renewal.”
(Footnote omitted.)
The Doll court went on to explain that early cases had held that the proceeds derived from timber operations were not fruits because their production resulted in Ifidepletion of the property. The court noted that, under certain circumstances, timber may be regarded as a “fruit,” citing LSA-C.C. art. 551, Comment (b), infra. The court continued, in affirming the trial court’s finding that the revenues derived from the sale of timber constituted a “fruit,” and stated at pp. 1247-48:
“Standing timber is an immovable and, unlike oil and gas, ownership of the land may or may not include ownership of the timber. Compare La.Civ.Code Ann. arts. 463, 464 (West 1980) with La.Rev.Stat. Ann. § 31:6. Ample support exists for classifying the growing timber, and the revenues derived therefrom, as a nonfruit or product. See, e.g., Harang, supra; Alexander [v. Alexander, 357 So.2d 1260 (La.App.2nd Cir.1978)], supra; Succession of Rugg, 339 So.2d 519 (La.App.2d Cir.1976), writ denied 341 So.2d 897 (1977); Steib v. Rathborne Land Co., Inc., 163 So.2d 429 (La.App. 4th Cir.), writ denied 246 La. 376, 164 So.2d 361 (1964); La.Civ.Code Ann. art. 551 comment (b); A.N. Yiannopoulos, Property § 42. But see La.Civ.Code Ann. arts. 560 and 562 (West 1980) (defining the circumstances under which timber and the *518 proceeds derived therefrom, are fruits belonging to the usufructuary).
“However, comment (b) to art. 551 provides,
Trees are born and reborn of the soil, but they are ordinarily considered to be capital assets rather than fruits on account of their slow growth and high value. See Harang v. Bowie Lumber Co., 145 La. 96, 81 So. 769 (1919). However, trees in a tree farm or in a regularly exploited forest may be regarded as fruits, because they are produced according to the destination of the property and without diminution of its substance. See Yiannopoulos, Personal Servitudes, § 27 (1968).
“Because timber sales from a tree farm would not result in a diminution of the property, revenues derived therefrom are considered fruit. While not contesting the validity of comment (b), the parties nonetheless dispute its application to this ease. Specifically, the dispute centers on the applicability of the term ‘tree farm’ to the Blanchard property, with each party declaring the comment sustains her position. Thus, whether or not the revenues derived from the timber sales constitute a fruit is dependent on whether the Blanchard property is a ‘tree farm,’ as the term is employed in comment (b). This is a question of fact, decided only impliedly by the trial court.”
|7In Doll, the appellate court had found that a “tree farm” existed on the property, stating:
“Of course, the Civil Code does not define ‘tree farm’ or ‘regular exploitation,’ as mentioned in the Revision Comments. Additionally, no cases have approached definitions of those terms. But, as shown by the record, the American Forest Council, which administers a national program to encourage improved management of forest lands, indicates that, ‘A tree farm is a tract of privately owned forest managed to produce continuous crops of trees with added benefits of improved wildlife habitat, watershed protection, outdoor recreation, and aesthetic value.’ Further, according to testimony, a tree farm may factually exist without the necessity for governmental or organizational certification.
“Thus, in light of Comment B to LSA-C.C. Art. 551 and the previous discussion, those funds generated by timber operations on the Blanchard property may be regarded as fruit from a tree farm.”
Succession of Doll v. Doll, 577 So.2d 802, 804 (La.App. 2d Cir.), writ granted, 582 So.2d 845 (La.1991).
The Louisiana Supreme Court in the Succession of Doll v. Doll, 593 So.2d, 1239 (La.1993), affirmed the appellate court’s classification of the revenue derived from the timber operation as “fruits.” The supreme court noted that the issue encompassed the distinction between “fruits” and “products” and looked at the ordinary meaning of the phrase “tree farm.” The supreme court found that the record provided ample support for the court of appeal’s conclusion that the property was a “tree farm” and the revenue derived from the timber sales constituted a fruit. The court continued by noting the criteria for the kinds of tree farming operations which would result in fruits, as follows:
“From the foregoing we determine designation as a ‘tree farm’ is premised upon the existence of management techniques aimed at securing continuous production of timber, a conclusion which comports with the principle of article 551 and comment b thereto. It is clear a tree farm can not be defined by reference to its character at the time of the growth, but rather by the land’s ability, through proper management techniques such as selective thinnings and plantings, to provide sustained yields. The timber sales at issue here were nothing more than selective thinnings intended to spur a fruitful and continuous yield over a prolonged stretch of time.”
Id. at pp. 1249-50.
| sIn this case, the trial court looked to the more particularized codal articles dealing with usufructuaries in determining whether Maude Myers, as usufructuary of her deceased husband’s estate, was authorized to sell the timber at issue.
*519 LSA-C.C. art. 550, 560 and 562 state respectively, as to the rights of the usufructu-ary:
LSA-C.C. art. 550:
The usufructuary is entitled to the fruits of the thing subject to usufruct according to the following articles.
LSA-C.C. Art. 560:
The usufructuary may cut trees growing on the land of which he has the usufruct and take stones, sand, and other materials from it, but only for his use or for the improvement or cultivation of the land. Comment (b) to Article 560 states:
(b)For the usufructuary’s right to continue the timber operations of the owner, and to treat as fruits the products of regularly exploited forest, see Article 562, infra; Yiannopoulos, Personal Servitudes § 27 (1968).
LSA-C.C. art. 562:
When the usufruct includes timberlands, the usufructuary is bound to manage them as a prudent administrator. The proceeds of timber operations that are derived from proper management of timberlands belong to the usufructuary.
The Comments to LSA-C.C. art. 562 are helpful in interpreting the legislative intent as to the substance of LSA-C.C. art. 562. These Comments state as follows:
Comments
(a) This article is new. It establishes the duty of the usufructuary to manage timberlands as a prudent administrator and his right to the proceeds of certain timber operations.
(b) Contractual or testamentary provisions may determine the rights and obligations of the usufructuary and of the naked owner insofar as timberlands are concerned. In the absence of such provisions, and in the more prevalent case of legal usufruct, the usufructuary is bound to manage timberlands as a prudent administrator and is entitled to the proceeds of timber operations that derive from a proper management of timberlands. These solutions are dictated by considerations of social and economic utility as well as concern for the interests of both the usufruc-tuary and the naked owner. Society has an interest in the continuous productivity of timberlands, the naked owner has an interest in the maintenance of crafts and skills organized around timber exploitation, and the usufructuary has an interest in the security of a regular income.
(c) Timber may be defined as trees which, if cut, would produce lumber for building or manufacturing purposes. This includes any trees that could be cut for economic gain, such as pulp wood, pines, hardwoods or building lumber. This would be equivalent to the definition of “merchantable timber” as used in Louisiana law.
(d) Timber operations by the usufructu-ary should not deplete the substance of the land. Modem techniques of regulated felling insure continuous production of timber and improvement of its quality. The interests of the naked owner are protected by the prohibition of waste and by the obligations of the usufructuary to act as a prudent administrator and to preserve the substance of the property subject to the usufruct.
Plaintiffs contend that these Comments stand for the proposition that Maude Myers did not have the right to sell the timber. The trial court, in its oral reasons for judgment, 19stated, regarding LSA-C.C. art. 562, as follows:
“And Article 562 addresses the usufruct over the timber lands and it reads as follows: Civil Code Article 562, which is identified as ‘Usufruct of Timber Lands’, that means the use of timber lands. ‘When the usufruct includes timber lands, the usu-fructuary is bound to manage them as a prudent administrator. The proceeds of timber operations that are derived from the proper management of timber lands belong to the usufructuary.’ That is sounded by Acts 1976, Number 103, Section 1. Its language is very plain and the official comments indicate that these solutions are dictated by social and economic considerations as well as those of the usu-fructuary and the naked owner. Specifically, the usufructuary here, Maude Myers, has an interest in the security of a *520 regular income. The comments indicated that modern production methods be used. Here a timber company was contracted to do the job with adequate and reasonable job experience and equipment. The only act that might be required of the usufruc-tuary that wasn’t done was reforestation. However, the usufructuary died before this entire matter was resolved. It is the opinion of this Court that Maude Myers, under Article 562, had the legal authority to sell the timber in question. Therefore, the claim against Maude Myers and Mary Chandler for the unauthorized sale of the timber, a directed verdict is granted in favor of the defendants.”
Under our interpretation of LSA-C.C. arts. 560 and 562 and utilizing the guidance of the Succession of Doll, supra, we find that the proceeds from timber operations are considered “fruits” if harvested as a “tree farm” in the non-usufructuary context and when involving a usufructuary, if harvested utilizing proper management techniques as a “prudent administrator.” By contrast, if timber is cut without the opportunity for regrowth |i0as in the case of a change in land use, the timber would be considered a “non-fruit” and a product or consumable pursuant to LSA-C.C. arts. 488, 536 and 538.[7]
In this case, we find that the evidence supports the trial court’s conclusion that Maude Myers acted as a prudent manager in the sale of the timber at issue. She initiated a declaratory action to remove a potential cloud on the title to the property prior to the sale. She received bids from several timber companies and accepted the highest bid. Evidence was adduced at trial that the $36,-500.00 received in the sale was a fair price for the timber sold. This was also stipulated by plaintiffs’ counsel at trial.
Colfax Timber Company obtained a title opinion from Attorney A. Dale Smith to ensure that Maude Myers had the authority to sell the timber. The timber deed executed and placed $10,000.00 in escrow in the event of potential litigation. Marie testified that Maude, prior to her death, had discussed cleaning up the land with Colfax. Finally, there was evidence adduced at trial that the methods utilized by Colfax Timber Company in the timber operation constituted “good forestry practices.”
Under these facts, we find that the trial court was correct in finding that Maude Myers managed the timberlands as a prudent administrator thereby entitling her to the proceeds from this timber sale pursuant to LSA-C.C. art. 562.
Insofar as we agree with the trial court in its finding that Maude Myers possessed the legal authority to sell the timber at issue, we find no error in the trial court’s finding of no liability on behalf of defendant and Attorney A. Dale Smith due to the rendering of a title opinion on the land at issue. We note that the judgment rendered by the trial court granted judgment “in favor of defendant, Smith, and against Plaintiff, Julius Estate, I udismissing Julius Estate’s claim against Smith, at Julius Estate’s court costs.” Although we find that the claim against Smith was properly dismissed, we note that the claim against Smith was brought by Colfax Timber Company rather than the Julius Estate. Therefore, the Julius Estate was erroneously cast with court costs associated with the claim brought against Smith by Colfax.

RECONVENTIONAL DEMAND OF COLFAX TIMBER COMPANY

Colfax, by reconventional demand, named the original plaintiffs, Julius L. *521 Myers, both as administrator of the Estate of Julius J. Myers and individually, Raymond V. Myers and Jimmy Chandler as defendants in reconvention. Colfax alleged that “Myers notified Colfax prior to completion of said timber contract to stop any operation.... Pursuant to said notification, Colfax ceased operations under said timber deed and did not cut or remove any further timber or perform any other work on said property.” Colfax reconvened against the plaintiffs for the timber left uncut on the land at the time Colfax retreated.
David Roberts, president of Colfax Timber Company, testified on behalf of Colfax. Roberts testified that he had received a call from an individual who advised him that he was cutting the Myers’ timber and that in his own best interest, he should stop or get out. Within hours of receiving the call, Roberts proceeded to the job and told his men to shut the job down and move their equipment. They left before all the timber was cut amounting to a monetary loss to Colfax.
Both Julius L. Myers and Raymond V. Myers were questioned on cross-examination as to whether or not they had contacted Roberts. Both plaintiffs denied any contact with Roberts. In fact, both plaintiffs testified that they were unaware that the timber had been sold until after Colfax had left the property. Jimmy Chandler, grandson of Julius J. Myers, also testified that he, in no manner, told the timber company or anyone associated with Colfax to get off of the land. Nevertheless, Roberts testified that he thought he recognized the voice on the telephone as one of the plaintiffs, although he could not be certain as to who called and threatened him. Marie Chandler also testified at trial that she did not know that anyone had told Colfax to leave the timber operation on the Myers’ land.
With this “questionable” proof, the trial court awarded $3,500.00 to Colfax for the uncut timber. From the record before us, we find that the award of $3,500.00 in favor of Colfax Timber Company must be reversed, insofar as the trial court manifestly erred in finding that Colfax had carried its burden of proving that it had been threatened by the 112Julius Estate.[8] As such, we reverse that portion of the judgment awarding $3,500.00 to Colfax Timber Company.

ATTORNEY’S FEES

The Julius Estate, by its next assignment of error, contends that the trial court erred in its ruling in favor of Colfax Timber Company, Inc. and against both the Estates of Julius and Maude, in solido, for attorney’s fees in the amount of $2,250.00, representing attorney’s fees incurred for the defense of litigation.
Colfax, by third party petition and call in warranty, named the Estate of Maude Myers, Mary Marie Myers Chandler, and Attorney A. Dale Smith as third party defendants. Colfax contends that pursuant to the terms of the timber deed, the vendor agreed to indemnify and hold Colfax harmless against any and all litigation costs incurred by Colfax, including attorney’s fees in defense of a legal action instituted by any third party. Colfax then prays for judgment in favor of Colfax and against Maude, Mary and Smith as to any liability found on behalf of Colfax. No specific prayer for attorney’s fees was included, although the timber deed was entered into evidence which provides for said attorney’s fees.
Colfax’s answer and reconventional demand, wherein it reconvened against Julius L. Myers,. individually and as administrator of the Succession of Julius J. Myers, Raymond V. Myers and Jimmy Chandler, includes no prayer for attorney’s fees, but prayed solely for the loss in reference to the uncut timber.
Insofar as we have held that Maude Myers was entitled to the proceeds as “fruits” of the timber deed and Maude Myers was the only party which entered into the timber deed, we find that the Maude Estate should be solely responsible for the attorney’s fees attributed *522 to her ownership interest in the timber, including the usufruct.
The fact Maude was also representing the Estate of Julius at the time of the sale is of no moment in the award of attorney’s fees, insofar as the Julius Estate had no ownership interest in the timber sold and therefore, had no interest which was sold. The Julius Estate was not a party to the agreement to pay Colfax’s attorney’s fees in defense of litigation. There exists no legal basis to hold the Julius Estate responsible for Colfax’s attorney’s fees.
The judgment of the trial court will be amended accordingly.

_¡wDAMAGES

Appellants next contend that the trial court erred in disallowing evidence as to the cost of clearing and burning debris and reforesting the land. We find no error in this ruling of the trial court.
Herman Collins, offered by plaintiffs as an expert in landscaping, clearing land, dirt work, and restoration of properties, testified that he had never seen a timber company level land and dig up stumps. In other words, this obligation did not ordinarily arise under a timber contract but instead, would only be done at the request of the owner.
When asked to estimate the costs per acre to burn debris and clean up the area without removing the stumps, counsel for defendants objected and the court sustained the objection, finding that the issue of damages to land and reforestation were not- before the court. Plaintiffs then proffered this evidence and on appeal assign the trial court’s refusal to allow evidence of the cost of reforestation as error.
Our review of plaintiffs’ petition reveals that no cause of action for damages to the land or demand for reforestation was prayed for or pled. This is not an action against a usufructuary for waste pursuant to LSA-C.C. art. 623. Plaintiffs’ petition alleges a claim for conversion, contending that the land was sold for less than fair market value, together with a claim for collusion and undue influence on the part of Marie Myers Chandler. The defendants properly objected to this expansion of the pleadings at trial. See LSA-C.C.P. art. 1154. As such, we find no error in this evidentiary ruling of the trial court.

CONCLUSION

Based upon the foregoing, we reverse that portion of the trial court judgment awarding $3,500.00 in favor of Colfax for uncut timber and against the Julius and Maude Estates; we amend that portion of the trial court judgment awarding $2,250.00 as attorney’s fees in favor of Colfax and against both the Julius and Maude Estates; and we affirm the remainder of the trial court judgment.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:
(1) Judgment is granted in favor of defendant, Maude Estate and Mary Marie Chandler, and against plaintiff, Julius Estate, dismissing Julius Estate’s claim against Maude Estate and Mary Marie Chandler.
(2) Judgment is granted in favor of defendant, Smith, and against third party plaintiff, Colfax Timber Company, dismissing Colfax Timber Company’s claim against Smith.
(3) Judgment is granted in favor defendant, Colfax, and against plaintiff, Julius Estate, dismissing Julius Estate’s claim against Colfax.
(4) Judgment is granted in favor of Colfax on the third party petition against the | uMaude Estate for attorney’s fees in the amount of $2,250.00, together with legal interest thereon from date of judgment rendered December 8, 1992, until paid.
(5) Expert witness fees for Herman Collins, Lamar Joffirion, Roger Tate, Manuel Willet and Glen Stephens are set in the amount of $150.00 each, taxed as costs in these proceedings and assessed against Maude Estate and Julius Estate, in solido, together with legal interest from date of rendition of said judgment on December 8, 1992, until paid.
(6) Colfax is awarded judicial interest from December 1, 1992, on $300.00 advanced as court costs by Colfax until payment is made.
*523 Costs on appeal to be divided equally between the Julius Estate, the Maude Estate and Colfax Timber Company, Inc.
AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART AND RENDERED.

. Both Julius and Maude Myers were deceased at the time of trial.

. Julius L. Myers sued individually and in the capacity of Administrator for the Estate of Julius J. Myers, having received Letters of Administration on September 22, 1989.

.Substituted for Maude Myers after her death.

. The award of attorney’s fees appears to be against both the Julius and Maude Estates on the basis that Maude, in entering the timber sale containing an indemnity agreement as to attorney’s fees, acted on her own behalf and on behalf of the Julius Estate.

. LSA-C.C. art. 551 states in relevant part:
"Fruits are things that are produced by or derived from another thing without diminution of its substance."
[[Image here]]

. LSA-C.C. art. 488 states in pertinent part:
"Products derived from a thing as a result of diminution of its substance belong to the owner of that thing....”

. Art. 488. Products; reimbursement of expenses
Products derived from a thing as a result of diminution of its substance belong to the owner of that thing. When they are reclaimed by the owner, a possessor in good faith has the right to reimbursement of his expenses. A possessor in bad faith does not have this right.
Art. 536. Consumable things
Consumable things are those that cannot be used without being expended or consumed, or without their substance being changed, such as money, harvested agricultural products, stocks of merchandise, foodstuffs, and beverages.
Art. 538. Usufruct of consumable things
If the things subject to the usufruct are consumables, the usufructuary becomes owner of them. He may consume, alienate, or encumber them as he sees fit. At the termination of the usufruct he is bound to pay to the naked owner either the value that the things had at the commencement of the usufruct or deliver to him things of the same quantity and quality.

. We note that the trial court also held the Maude Estate liable to Colfax for $3,500.00 for uncut timber. There was no claim for damage due to timber left uncut by Colfax against the Maude Estate in the third party petition; the sole claim against the Maude Estate was for costs, attorney's fees and/or damages associated with the defense of this litigation.